## JOHN STEVENSON L. YOST, JR., *v.* JOHN STEVENSON L. YOST

[No. 30, January Term, 1937.]

*Decided March 17th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Edgar Allan Poe, Jr.*, submitting on brief, for the appellant.

*George M. Brady*, with whom were *William Milnes Maloy* and *John H. Lewin* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The main question presented by this appeal is whether an infant can sue its parent in a court of equity for maintenance, or for an increase in the amount of maintenance which the parent is, at the time of suit, then voluntarily paying toward the support of the infant.

The plaintiff, John Stevenson L. Yost, Jr., an infant now of the age of six years, by his mother and next friend, instituted suit against his father in the Circuit Court No. 2 of Baltimore City, on June 11th, 1936, by which he prays that court to assume jurisdiction in the premises, and pass a decree directing his father, John Stevenson L. Yost, to pay his mother, Helen Gatchell Yost, such sum per month as said court may deem proper for the necessary expenses incurred by the infant, with due regard for his

station in life, the increased cost of living, the increased earnings of his father, and the inability of the mother to secure employment in aid of his support. By the bill of complaint it is further set forth (a) that irreconcilable differences have arisen between the parents; (b) that the mother obtained a divorce *a vinculo matrimonii* from the father on October 23rd, 1933, in the State of Pennsylvania; and (c) that prior to the date of the divorce decree, to wit, April 19th, 1933, in the Municipal Court of Philadelphia, at the suit of the Commonwealth of Pennsylvania against the father, an order was passed directing the latter to pay the mother the sum of fifty dollars per month for his support. It is alleged in the bill that the infant was not served with process in either of the aforementioned suits, nor was he made a formal party, or represented by a guardian *ad litem* or next friend in either action; that the annual income of the father had increased from $6,000 to over $8,000 since the passage of the order of the Municipal Court; that meanwhile the maintenance expenses of the infant had increased; and that demand for an increase in the monthly allowance to the infant had been refused, whereby the infant was unable to live in the manner to which his station in life entitled him. Accompanying the bill of complaint is a copy of an absolute decree by the Court of Common Pleas, part 3, of Philadelphia, dated October 23rd, 1933, divorcing the father and mother, in which decree nothing appears as to the custody of the infant child of the parties to that cause; and also a copy of a decree and order of the Municipal Court of Philadelphia, dated April 19th, 1933, directing the monthly payment for the support of the infant, as set forth in the bill, accounting from the date of the order, and requiring the father to execute a bond in the sum of $500 for the faithful performance of that order. Said decree or order of the latter court does not in terms retain the subject-matter of the decree for any future action by that court.

The defendant filed a combination demurrer and answer to the bill, accompanied by an exhibit tending to show a

settlement agreement between the husband and wife, as of the date of its execution, November 17th, 1930, which date antedates the birth of the infant plaintiff—March 10th, 1931. One of the provisions of the agreement is that in event a child should be born to the parties prior to August 1st, 1931, in addition to the amounts stipulated to be paid the wife, "the husband will pay to the wife for full support and maintenance of said child, the sum of $50 per month from July 10th, 1931, until said child shall reach the age of three years, and thereafter while the wife has custody of the child, such sums for its support as may be mutually agreed upon hereafter."

The chancellor heard the case upon demurrer, and from an order sustaining the same and dismissing the bill of complaint, this appeal is taken.

Reasons assigned for the demurrer are: (a) That the latter is bad in substance, upon the face of the bill and exhibits; (b) that the court was wholly without jurisdiction to maintain the suit; (c) that the matter in controversy had been settled and concluded by a decree of a court of record having jurisdiction of the subject-matter and of the parties to the suit, in a proceeding in which the infant plaintiff was legally represented by the Commonwealth of Pennsylvania and his mother; (d) that the plaintiff had been, and was then being, provided for by the continued expenditure by the defendant of the sum of fifty dollars per month for his benefit, pursuant to a binding agreement in that regard, approved by a court which had jurisdiction in the premises; and (e) that the infant plaintiff had no right or standing to maintain the suit against his father, the defendant.

By the bill of complaint in the instant case, it is alleged that the plaintiff and his mother, as well as the defendant, are now residents of the City of Baltimore; and, in the argument of the appellee in this court, it was urged that the lower court was without jurisdiction because the matter of the amount of maintenance to which the infant was entitled had been adjudicated by the Pennsylvania court, and hence, under the full faith and credit clause of

the Constitution of the United States, art. 4, sec. 1, it was *res adjudicata.*

The general rule is that a judgment of a court of competent jurisdiction is final and conclusive, and must be given full faith and credit in all other jurisdictions as to all matters in controversy, or which with proper diligence might have been interposed as a defense in the original action in the jurisdiction of another state. And it is equally well settled that a judgment is conclusive only in so far as it is responsive to the pleadings, and that evidence may be offered to show the subject-matter involved was not included in the proceedings in the foreign jurisdiction.

In the body of the order of the Municipal Court, as it appears in the record, no reference is made to the duration of time in which the defendant was required to pay the monthly maintenance money to the mother for the support of the infant. It merely provided for such payment, accounting from April 19th, 1933, and omitted reference to the outstanding agreement between the father and mother, unless the word "agreement" appearing on the copy of the order, and not further connected therewith, can be so construed. Assuming, however, that such notation on the order was intended to embody the agreement therein, it is apparent from the record that the agreement, by its express terms, in so far as the fixed amount of monthly payments was concerned, expired on March 10th, 1934, on which date the child reached the age of three years. It follows, therefore, that neither the decree nor the agreement can apply beyond the scope of their intent and purport, and are not necessarily conclusive as to a subsequent time on a different state of facts. *Hunt v. Snyder,* 261 Pa. 257, 104 A. 603; *Reynolds v. Stockton,* 140 U. S. 254, 11 S. Ct. 773, 35 L. Ed. 464. We cannot, therefore, agree with the contention of the appellee that the doctrine of *res adjudicata* applies; and we are of the opinion that in a proper proceeding the courts of this state can assume jurisdiction in the premises whenever occasion arises, so long as the parties remain within the state.

While it is true, as alleged in the bill of complaint and admitted by the demurrer, the infant plaintiff has been in the custody of his mother since the decree for divorce was passed, it is also shown that such custody has not been exclusively vested in the mother by the authority of any court; and since the passage of the Act of 1929, ch. 561, now section 1 of article 72A of the Code (Supp. 1935), "The father and mother are the joint natural guardians of their minor child and are equally charged with its care, nurture, welfare and education. They shall have equal powers and duties, and neither parent has any right superior to the right of the other concerning the child's custody." Although the parties have been living apart, the custody of the infant has meanwhile evidently been adjusted through the mutual agreement of its parents, and during the period of the present custody the father has contributed the sum of fifty dollars per month for the support of the child. Were the parties living together, it could hardly be contended that the infant, through its mother as next friend, could assert a right to dictate to the father the amount which the latter should contribute or expend toward its support; and we can see no justification why the claim of the infant, as against his father, and his right to have determined the amount which the father should expend toward his maintenance, should be any stronger in one case than the other. At common law at least, the moral obligation to support his child during its minority rests upon the father; and this obligation continues, without regard to a divorce decree, unless by virtue of that decree the court having jurisdiction over the subject-matter orders otherwise. In other words, if there had been no divorce, the father would be compelled, under the laws of this state, so long as he lives, or until the child reaches majority, to contribute to its support. And were this a case in which he was seeking to repudiate this obligation, we have no hesitancy in saying that, under the provisions of section 80 of article 16 of the Maryland Code, relief commensurate with the means of the father and his station in life could be obtained. In substance,

that section clothes the courts of equity of this state with original jurisdiction in all cases relating to custody or guardianship of children, and authorizes a bill or petition to be filed by either parent, a relative, or next friend of any child, (a) to determine such custody, and (b) to further determine who shall be charged with the support and maintenance of such child, as well as from time to time thereafter to annul, vary, or modify its decree relating to such child. Upon the status of the case before us, it is unnecessary, and we are not to be so construed, to pass upon the appropriateness of the application of this statute thereto; but it is nevertheless apparent that, if the welfare of the infant plaintiff is sought to be furthered through any legal proceeding, such proceeding must be in conformity with the statute. The suit in the instant case is in the familiar form of an action by the minor himself, but we take it to be intended as, in effect, to be a suit by the mother in accordance with the statutory provision.

Apart from statutory regulation, however, a careful examination leads to the conclusion that a majority of the courts in which the question has arisen have decided that, as a general principle, such an action as this cannot be maintained by or on behalf of a minor child against its parent for nonfeasance as to the performance of moral duties of support, or for neglect. These acts, as distinguished from overt acts of tort, grow out of and pertain to the relation of parent and child. Stated differently, for acts of passive negligence incident to the parental relation, there is no liability. The doctrine is founded upon public policy, and is designed to preserve the peace and harmony of the home, as well as to recognize the authority of the parent, under normal conditions, responsible for the maintenance of the home. *Schneider v. Schneider,* 160 Md. 18, 152 A. 498; *Hewlett v. George,* 68 Miss. 703, 9 So. 885; *Mesite v. Kirchenstein,* 109 Conn. 77, 145 A. 753; *Dunlap v. Dunlap,* 84 N. H. 352, 150 A. 905, 71 A. L. R. 1055.

The appellee in his brief calls the attention of the court

to the fact that the written authority of the next friend to the solicitor, for the purpose of bringing the suit, was not filed in the proceedings, in accordance with section 162 of article 16 of the Code. While we are not to be understood as approving this practice, it may be said in the instant case that, inasmuch as the purpose of the required written authority is to secure the payment of the costs of the proceedings on behalf of the infant, and in our opinion the costs in this case should be paid by the father, this omission is immaterial.

> *Order affirmed; costs to be paid by the appellee.*