FRANK W. LATZ, Administrator of the Estate of Margaret Latz, ET AL. *v.* JOANNE LATZ A/K/A JOANNE SCHAFER

[No. 275, September Term, 1970.]

*Decided January 11, 1971.*

The cause was argued before ORTH, MOYLAN, and POWERS, JJ.

*James G. Perry* for appellant.

*C. Edward Hartman, II,* with whom was *Eugene A. Edgett, Jr.,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

In *Schneider v. Schneider,* 160 Md. 18, Ludwig Schneider and James Schneider appealed from a judgment against them by their mother for personal injuries sustained by her while riding in an automobile owned by Ludwig and driven by James. There was no question of the legal sufficiency of the evidence to support a finding

of negligence on the part of James in driving the automobile. The Court found that neither Ludwig nor James could in law be held answerable to their mother for injuries caused by the negligence of James. Why James could not be so held is directly relevant to the case before us.[1] The Court said, at 21-24:

> "The obstacle to the mother's recovery against James Schneider is in the fact that she sues a minor son, of whom she, jointly with the father, is the natural guardian. Acts 1929, ch. 561, sec. 1; Code, art. 72A, sec. 1. The ordinary position of parent and guardian of a minor, and that of plaintiff seeking to recover from the minor, are positions which cannot both be occupied by one person at one and the same time. Maintenance of the suit is inconsistent with the parent's status or office, and the dependence of the minor upon her, and also with the dependence of the law upon her for the fulfillment of necessary legal and social functions. A right of action at law is not one open to any and all persons against any others, without reference to relationships which may exist between them. The court has decided that a wife cannot sue her husband for damages sustained in an automobile accident. *Furstenburg v. Furstenburg,* 152 Md. 247. It appears that a majority of courts in which the question has arisen have decided that a minor child cannot maintain such an action against its parent —a question differing somewhat from the one now decided. *Hewlett v. George,* 68 Miss. 703; *McKelvey v. McKelvey,* 111 Tenn. 388; *Roller*

---

1. Ludwig, the owner of the vehicle, was found not liable because he was neither the driver nor the master of the driver. "Mere ownership of a car does not impose liability for injuries caused in the driving of it. Liability, when it exists, is not for the car, but only for the act or omission of the person driving. And when the owner has not himself been the negligent cause of an injury, he can be held liable vicariously only when the negligence has been that of his servant engaged in his affairs." *Id.,* at 20-21.

*v. Roller,* 37 Wash. 242; *Small v. Morrison,* 185 N. C. 577; *Wick v. Wick,* 192 Wis. 260; *Matarese v. Matarese,* 47 R. I. 131; *Sorrentino v. Sorrentino,* 222 App. Div. 171, 226 N. Y. Supp. 907, affirmed 248 N. Y. 626; *Mesite v. Kirchenstein,* 109 Conn. 77, 145 Atl. 753; *Dunlap v. Dunlap,* (N. H. 1930), 150 Atl. 905. See study of cases, 43 *Harvard Law Rev.* 1056 to 1082. It is generally agreed that a guardian, or one standing in place of a parent, cannot sue his ward, because, committed as he is to the care and protection of the ward's interests, going to law with the ward to recover a judgment against him and his property is precluded as inconsistent. 'That an action at common law cannot be maintained between a guardian and a ward,' said the Supreme Judicial Court of Massachusetts, 'is clear. The character of that relation, the capacity in which the guardian acts, the duty to the ward's property, (even if a guardian *ad litem* may be appointed where he is interested), forbid that they should occupy the distinctly adverse position of suitors at common law, especially as to transactions since the guardianship commended. \* \* \* It is the relation in which the parties have stood to each other, rather than the fact that property has or has not come to the hands of the guardian, that renders it inconvenient and improper that either should undertake to sue the other at common law.' *McLane v. Curran,* 133 Mass. 531. See *Davis v. Davis,* 135 Miss. 214; *Kidd v. Prince* (Texas) 215 S. W. 844; *Davis v. Admrs. of Ford,* 7 Ohio, Pt. 2, 104, 109; *Brown v. Howe,* 9 Gray (Mass.) 84; *Smith v. Dudley,* 16 N. C. 354. And the inconsistency which prevents the maintenance of the suit by a guardian, one *in loco parentis,* would seem at least equally opposed to the maintenance of a suit by a parent. The case of *Kidd v. Prince,*

*supra,* was one of a parent suing a child. A minor is even more dependent upon a parent to provide for him the judgment and care which he, and any property of his, may need during his immaturity. In a suit against him he would ordinarily depend upon his parents to procure him an attorney, for he cannot appoint one. *Wainwright v. Wilkinson,* 62 Md. 146, 147. *Kemp v. Cook,* 18 Md. 130. One of his parents would ordinarily be appointed guardian *ad litem,* he being incapable of defending except by guardian. *Deford v. State,* 30 Md. 179, 199. And even if, in view of the antagonistic position sought to be taken by the parent, another might be appointed guardian *ad litem,* the natural dependence of the child on the parent would inevitably leave him largely subject to the parent's guidance and direction. There would be a question whether the parent would not be obliged to pay the expenses of litigation of the child.. And if the child should have property of his own, a parent suing would be in the position of seeking to gain for herself some of that property, while charged with the function of protecting the child's interest in it. *Townshend v. Duncan,* 2 Bland, 45, 51. It seems clear, without citing further difficulties, that, as has been stated, one person cannot at the same time occupy the position of parent and natural guardian, fulfilling the functions devolved upon that position, and the position of plaintiff demanding damages from the child at law. We need not dwell upon the importance of maintaining the family relation free for other reasons from the antagonisms which such suits imply. 'Both natural and politic law, morality, and the precepts of revealed religion alike demand the preservation of this relation in its full strength and purity.' *Schouler, Domestic Relations,* sec. 233."

For the first time since *Schneider* an appellate court of this State is presented with the precise question decided therein. Margaret Latz died from injuries received while a passenger in an automobile negligently driven by her unemancipated, minor daughter, Joanne Latz. Frank W. Latz, Margaret's husband and Joanne's father, sued his infant daughter in tort, claiming damages, as Administrator of his intestate wife's estate, for pain, suffering, death and medical and funeral expenses, Code, Art. 93, § 112,[2] and, as surviving husband, for pecuniary loss, loss of services and disruption of the marital relationship, Code, Art. 67, §§ 1 and 4. Joanne demurred and the demurrer was sustained without leave to amend. Appeal is from the judgment absolute entered in favor of Joanne.[3] The primary question is whether appellee could in law be held answerable to her mother for injuries caused by appellee's negligence.[4] It is clear that if *Schneider* is applied, appellee is immune from the action brought against her by appellant.

Appellant suggests that we overrule *Schneider* or depart from its rule. We are not persuaded to do so. Although the Court of Appeals has not had occasion to reaffirm the rule directly, it has recognized it and applied its rationale. In *Mahnke v. Moore,* 197 Md. 61, the Court recognized the rule of immunity but based an exception to it on narrow grounds. The question was whether a child could maintain an action in tort for personal injuries resulting from the acts of her father.[5] However, the acts

---

2. Margaret Latz died prior to 1 January 1970. See Code, Art. 93, §§ 7-401 (n) and 12-102 (a).

3. Joanne Latz, subsequent to the accident, married and became known as Joanne Schafer. Appellant filed and amended declaration.

4. Under Code, Art. 93, § 112 "[e]xecutors and administrators shall have full power to commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted, except actions of slander * * *" with a proviso for recovery of funeral expenses.

Code, Art. 67, § 1 provides a person causing the wrongful death of another shall be liable to an action for damages when the wrongful act is such as would (if death had not ensued) entitled the party injured to maintain an action.

5. The child was illegitimate but the court expressly treated the father as if he were a legitimate parent.

were not merely negligent, they were wantonly and maliciously atrocious.[6] The Court said, at 68, that in the circumstances:

> "[T]here can be no basis for the contention that the daughter's suit against her father's estate would be contrary to public policy, for the simple reason that there is no home at all in which discipline and tranquillity are to be preserved. It is conceded, of course, that parental authority should be maintained. It is also conceded that a child should forego any recovery of damages if such recovery would unduly impair discipline and destroy the harmony of the family. Ordinarily, the parent is not liable for damages to the child for a failure to perform a parental duty, or for excessive punishment of the child not maliciously inflicted, or for negligent disrepair of the home provided by the father. These acts grow out of and pertain to the relation of parent and child. But when, as in this case, the parent is guilty of acts which show complete abandonment of the parental relation, the rule giving him immunity from suit by the child, on the ground that discipline should be maintained in the home, cannot logically be applied, for when he is guilty of such acts he forfeits his parental authority and privileges, including his immunity from suit. Justice demands that a minor child shall have a right of action against a parent for injuries resulting from

---

6. The acts were that "he shot her mother in her presence with a shotgun, thereby blowing away the right side of [the mother's] head, a portion of her skull coming to rest on the kitchen table, and her body collapsing backward over a chair with her head resting in a pool of blood and her feet resting in another; that he kept her with the dead body [for six days] when he drove her to his home [in New Jersey] and there [the next day] he committed suicide in her presence by shooting himself with a shotgun, thereby causing masses of his blood to lodge upon her face and clothing." The child claimed that she suffered "shock, mental anguish and permanent nervous and physical injuries." *Id.*, at 63.

cruel and inhuman treatment or for malicious and wanton wrongs."

In *Yost v. Yost,* 172 Md. 128, holding that a parent is not liable to a child for neglect — passive negligence of nonfeasance — incident to the parental relation, as distinguished from "overt acts of tort", the Court applied the *Schneider* rationale saying: "The doctrine is founded upon public policy, and is designed to preserve the peace and harmony of the home, as well as to recognize the authority of the parent, under normal conditions, responsible for the maintenance of the home." Expanding the rule that precludes one spouse from recovering damages for injuries caused by the negligence of the other spouse by holding that a husband's employer is not liable to an employee's wife for injuries sustained by her as a result of her husband's negligence while acting within the scope of his employment, *Riegger v. Bruton Brewing Co.,* 178 Md. 518, even if she was a paying passenger in a taxicab driven by her husband, *Stokes v. Taxi Operators Assn.,* 248 Md. 690, the court followed three lines of cases, one of which was *Schneider.*[7]

*Schneider* was cited as the law of Maryland and its rationale applied by the United States District Court of Appeals for the District of Columbia in holding that an unemancipated minor child could not sue his parent for a tortious act in *Villaret v. Villaret,* 169 F. 2d 677, as did the United States District Court for the District of Maryland in *Zaccari, et al. v. United States,* 130 F. Supp. 50. And in *Sherby v. Weather Brothers Transfer Co., Inc.,* 421 F. 2d 1243, (1970) the United States Court of Appeals for the Fourth Circuit concluded that the Maryland Court of Appeals would follow the same line of reasoning as in *Riegger* in holding that a minor child cannot recover

---

7. The three lines of cases were: those holding that a spouse cannot maintain an action for tortious injury against the other spouse, *Furstenburg v. Furstenburg,* 152 Md. 247; those holding that a spouse cannot maintain an action against a partnership in which the other spouse is a member, *David v. David,* 161 Md. 532; and those holding that a parent cannot maintain an action against his or her child, *Schneider v. Schneider, supra.*

from his father's employer in an action based upon the father's negligence while acting within the scope of his employment. At 1246.

We are aware that *Prosser on Torts,* 3 ed., 1964, § 116, p. 885, under Domestic Relations, Torts in the Family, points out that there is great inconsistency and unsatisfactory reasoning in the various cases on the subject, particularly as to civil liability of husband or wife or parent or minor child to one another. It was observed that the common law conception of unity of legal identity of husband and wife had no similar conception of unity of legal identity in the case of parent and minor child. Clark, *Domestic Relations* (1968), § 9.2, pp. 256-260, strongly advocates abolition of the immunity with respect to parent and unemancipated child,[8] considering policies advanced in support of the immunity as "make-weights." [9]

We are also aware that there is a growing trend in other jurisdictions to abolish the parent-unemancipated child immunity. See, for example, *France v. A.P.A. Trans-*

---

8. In the child v. parent relationship he would abolish the immunity with the single qualification that the parent should have a privilege to use reasonable force in disciplining his child. *Id.,* § 9.2, p. 260.

9. Clark says, § 9.2, pp. 257-258:

"The commonest policy argument relied upon closely resembles that underlying the husband-wife immunity, the argument that if the child is permitted to sue his parent, discord will be created. A related assertion is also made that the parent's discipline, care and control of the child will be frustrated. Analysis stops at this point, the courts never troubling to explain just how, for example, parental control is impaired by allowing the child to sue his father for negligence in the operation of the family car. Does the child lose respect for his father when his father is proved to have been negligent? Or is it that the litigation creates ill feeling between father and child? Neither of these possibilities nor any other seems substantial. If the family is a going concern, the chances are that no suit at all will be brought unless the parent is insured. If the parent is insured, as the overwhelming majority of persons are today, then the suit will hardly produce family discord or impair parental disciplining. If the family has broken up through divorce or separation, and the child is not living with the tortfeasor, the tort suit can certainly have no effect on the parent-child relationship."

He finds "a touching concern" in the policies advanced in support of the parent-child immunity "for the assets of insurance companies."

*port Corp.*, 56 N. J. 500, 267 A. 2d 490 (N. J. 1970) ; *Streenz v. Streenz*, 106 Ariz. 86, 471 P. 2d 282 (Ariz. 1970) ; *Gelbman v. Gelbman*, 23 N.Y.2d 434, 245 N.E.2d 192 (N. Y. 1969) ; *Schenk v. Schenk*, 100 Ill.App.2d 199, 241 N.E.2d 12 (Ill. 1968) ; *Briere v. Briere*, 224 A. 2d 588 (N. H. 1966). And see also *Petersen v. Honolulu*, 462 P. 2d 1007 (Hawaii 1970) ; *Hebel v. Hebel*, 435 P. 2d 8 (Alaska 1967) ; *Nuelle v. Wells*, 154 N.W.2d 364 (North Dakota 1967) ; *Balts v. Balts*, 142 N.W.2d 66 (Minnesota 1966) ; *Xaphes v. Mossey*, 224 F. Supp. 578 (Vermont 1963) ; *Dunlap v. Dunlap*, 84 N. H. 352, 150 A. 905 (N. H. 1930) ; Annotation — Right of parent or representative to maintain tort action against minor child, 60 A.L.R.2d 1284-1296.

We note that in *Sherby v. Weather Brothers Transfer Co., Inc., supra,* it was argued that the general trend is toward liberalization and that a growing number of courts have abolished the parent-child immunity rule. The Court said, at 1246: "This argument failed to persuade the district court and we decline to follow and apply it here in the face of the apparent leaning of the highest court of Maryland toward a contrary view."

We do not think that the fact that appellee may have been protected by liability insurance affects the answer to the question.[10] There is no doubt of the attitude of the Court of Appeals on the effect of liability insurance for it said in *Schneider* at 24:

"Reference has been made in argument to policies or contracts held by one or both of the sons for indemnifying them against loss from

**10.** The amended declaration of appellant alleged that appellee "was not gainfully employed, was under the age of 21, resided with her parents, and had met all requirements imposed by Maryland Code and particularly Article 66½, Sec. 93 thereof, creating financial responsibility requirements for the operation of motor vehicles by minors, by purchase of insurance." In limitation of the total damages claimed, appellant asserted in the declaration that he "does reduce and limit the damages claimed in each count hereof and in total to an amount equal to the total amount of all insurance coverage applicable to the happening of the accident complained of herein." The propriety of this is not before us.

> recovery of judgment against them, but there is no reference in the record to such policies. They would not be relevant. The suit is not one on a policy, and the possession of a policy by the defendants could not affect the disposition of this case. *International Co. v. Clark,* 147 Md. 34, 42. And see *Lord v. Veazie,* 8 How. (U. S.) 251."

See *Villaret v. Villaret, supra,* at 679. Prosser states, *Law of Torts, supra,* § 116, p. 889 as to liability insurance:

> "Most of the courts which have mentioned the matter at all, instead of deciding the question as one of policy, have gone off on the narrow technical ground that liability insurance does not create liability, but only recompenses it when it otherwise exists. On this basis, it is still undoubtedly the general holding that the fact that the particular defendant has insurance does not change the rule denying a remedy to either spouse, or to parent or child; and that, if anything, the danger of collusion against the insurer affords a reason for not abrogating the immunity."

We feel that the rule of *Schneider* is firmly enough embedded in the law of Maryland as to make inadvisable its abolition by judicial decision and we decline to change it for other than constitutional reasons.[11]

Appellant contends that the *Schneider* rule is unconstitutional. He first refers to Art. 5, Declaration of Rights, Constitution of Maryland adopting the common law of England in mass, so far at least as it was not inconsistent with the principles of the Constitution and the na-

---

11. We observe that even in holding that a mother could sue her adult son to recover for personal injuries where the mother and son were free and separate persons having the right to sue and be sued and there was nothing to show that the son was entitled to the control of his mother or was entitled to receive any services from her, the Court of Appeals adhered to the rationale of *Schneider.* The Court reasoned that in such circumstances the action could not disrupt and destroy the peace and harmony of the home which is against the policy of the law. *Waltzinger v. Birsner,* 212 Md. 107.

ture of our political institutions. He claims that at common law there was no prohibition of action between parent and child. *Mahnke v. Moore, supra,* at 64. See *State v. Magliano,* 7 Md. App. 286, 292-295. But "* * * the common law is not static but adopts itself to changing conditions and increasing knowledge." *Maryland to use of Weaver v. O'Brien,* 140 F. Supp. 306 (U.S.D.C.D.Md. 1956). "[W]hether parts of the common law are applicable because of our circumstances and situations and on a general code of laws and jurisprudence, is a question which comes within the province of the courts of justice and is to be decided by them." *Gilbert v. Findlay College,* 195 Md. 508, 513. Art. 5 referring to the common law en masse existing here either potentially or practically, as it prevailed in England on 4 July 1776, *State v. Buchanan,* 5 Har. & J. 317, 358, does not preclude a change of it by judicial decision. We hold that Art. 5 of the Declaration of Rights of Maryland does not preclude the *Schneider* rule.

We have carefully considered appellant's claim that the parent-child immunity rule is constitutionally infirm. We do not agree that it violates the 8th and 19th Articles of the Maryland Declaration of Rights or the 1st, 4th, 5th and 14th Amendments to the federal constitution. We do not find the cases cited by appellant to be dispositive of the question. No case has been brought to our attention compelling us to hold or sufficiently persuasive for us to hold that the Court of Appeals exceeded constitutional authority or violated constitutional dictates in announcing and applying the rule in *Schneider.* Nor do we find in the many cases in other jurisdictions discussing parent-child and husband-wife immunity a holding that such immunity is unconstitutional. Not even *Prosser* or *Clark,* who are patently disenchanted with the doctrine, make such claim. We observe, however, that the argument that Art. 8 of the Maryland Declaration of Rights, providing for the separation of the legislative and judicial functions, is violated because the doctrine came about by judicial rather than legislative action, ignores a basic

function of the judicial process. The Court said in *Deems v. Western Maryland Ry.*, 247 Md. 95, 101-102:

> "The consideration of the distinction between one group of facts and another in deciding the application of legal rules, the classification of relationships in the light of principles of justice, history and the social welfare, the determination of rights and liabilities according to status and general circumstances — these are of the warp and woof of our judicial system. See Holmes, *The Common Law* 117, and Cardozo, J. in *Jacob & Youngs, Inc. v. Kent,* 230 N. Y. 239, 242-243, 129 N. E. 889, 891 (1921). It is judge-made law which decides the varying legal liability of an owner of land to persons upon his property according to whether they be invitees, licensees or trespassers, and the age below which infants cannot be charged with contributory negligence. These, and many other classifications, are made as a necessary part of the judicial function. The making of such determinations violates no principle of the separation of powers, for traditionally and as an inherent part of our system of government their formulation is a necessary part of the judicial duty."

As to the claim that there is an invalid discrimination in the doctrine under the Equal Protection Clause of the 14th Amendment to the federal constitution, we see no discrimination at all. The rule grants immunity to all unemancipated minor children as a class. It applies to all parents of such children. Thus there is no consideration of inequality as may exist, for example, in the refusal to allow the wife recovery for the loss of her husband's consortium, although the husband is allowed the right to recover for the loss of the wife's consortium.[12]

We hold that the rule that a minor, unemancipated

---

12. See discussion in *Deems v. Western Maryland Ry., supra.* However, *Deems* did not find it necessary to decide whether the

child is not answerable to its parent for injuries caused by the child's negligence is not constitutionally proscribed.

When the Court of Appeals and this Court considers the constitutionality of a statute, there is the presumption of the validity of the legislative enactment; the action reviewed is that of a separate depository of the sovereign power. "When a court must review its own decisions, the action is one of self-examination. A decision of a state appellate court remains the law unless and until it is overruled, not only because, on re-examination, it is generally believed to be correct by the court which made it, but because of the doctrine of *stare decisis*. However, *stare decisis* is a policy rather than a presumption. Under that policy, for reasons of certainty and stability, changes in decisional doctrine are left to the Legislature." *Deems,* at 102. So, the Court of Appeals said, as to the rule stated in *Riegger v. Bruton Brewing Co., supra,* based in part at least on the rationale of *Schneider,* "If the rule is to be changed, the Legislature will have to do it." *Stokes v. Taxi Operators Assn., supra,* at 692; *Fernandez v. Fernandez,* 214 Md. 519; *Ennis v. Donovan,* 222 Md. 536. In addition we believe it particularly fitting that any change in the parent-child immunity rule should be by legislative action. The case against the rule is not so clear as appellant would like despite its abolishment in some other jurisdictions. We cannot say that the reasoning of the Court of Appeals as stated in *Schneider* and followed since in principle was without validity then or is without validity now. And there may be other considerations favoring the rule that have probative force.[13] We

---

Equal Protection Clause compels a holding that the wife shall have a separate cause of action for loss of her husband's consortium due to injuries sustained by him because of the negligence of a third party. "If the right to sue for loss of consortium is regarded as available only to the husband and wife jointly, there is no longer a question of unequal treatment of wife and husband by the courts." *Id.,* at 108.

13. *E.g.,* "[T]he danger of collusion between the injured person and the insured, always present in liability insurance cases, is not at all lessened, but in fact considerably increased, by the family relation; and if the far from negligible cost of the insurance premium is to be imposed upon family defendants, they will in the aggregate bear all but an inconsiderable part of the liability. *Prosser, supra,* § 116, p. 889.

are not wholly in accord with Clark that the immunity has a "shaky status in the law" and that "there is an obvious need for legislative action." The legislature in Maryland has been aware of the immunity under the *Schneider* decision for 40 years and has taken no action to change it. If there is a need for change let it come by legislative enactment so interested parties and the general public may first be heard and given an opportunity to express their views.

We hold that the lower court did not err in sustaining appellee's demurrer without leave to amend.

In view of our holding we do not reach the question of the applicability of Code, Art. 67, § 4 (b) to the action here. We point out, however, that we have held that § 4 (b) applies only to those actions brought pursuant to Art. 67, § 1 in which the death of a wrongfully killed spouse or minor child occurred on or after 1 July 1969. *Wittel v. Baker*, 10 Md. App. 531 (1970).

*Judgment affirmed; costs to be paid by appellant.*