MAHNKE *v.* MOORE, EXECUTRIX

[No. 72, October Term, 1950.]

*Decided January 12, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Frederick W. C. Webb* and *John W. T. Webb,* with whom were *Webb, Bounds, Travers & Adkins* on the brief, for the appellant.

*James P. Bailey* and *Ernest C. Clark,* with whom were *Clark & Hearne and Hamilton P. Fox, Jr.,* on the brief for the appellee.

DELAPLAINE J., delivered the opinion of the Court.

This is an action in tort instituted in the Circuit Court for Wicomico County by Marilyn Marie Mahnke, infant illegitimate daughter of Russell C. Moore, deceased, and Marjorie Mae Mahnke, deceased, to recover for personal injuries caused by atrocious acts committed by her father in her presence. The suit was filed for her by her grandfather, Hugo Mahnke, her guardian and next friend, against Laura Woodward Moore, her father's widow and executrix.

Plaintiff alleges in her declaration that she was born on May 15, 1945; that for several years prior to January 1, 1950, her father and mother lived together in a bungalow in Salisbury ostensibly as husband and wife, but on or about January 1, 1950, she and her mother left him because of his cruel and inhuman conduct; that early in March they were induced by him to return; that on March 7 he shot her mother in her presence with a shotgun, thereby blowing away the right side of her head, a portion of her skull coming to rest on the kitchen table, and her body collapsing backward over a chair with her head resting in one pool of blood and her feet resting in another; that he kept her with the dead body until the night of March 13, when he drove her to his home at Collingswood, New Jersey, and there on March 14 he committed suicide in her presence by shooting himself with a shotgun, thereby causing masses of his blood to lodge upon her face and clothing. She claims that as a result of her father's acts and the conditions thereby created to which she was subjected, she has suffered shock, mental anguish and permanent nervous and physical injuries.

Defendant demurred to the declaration. The Court sustained the demurrer and entered judgment in favor

of defendant. From that judgment plaintiff appealed to this Court.

The question here presented is whether the illegitimate child can maintain an action in tort for personal injuries resulting from the acts of her father. The early common law of England recognized that parents possessed rights which were superior to the personal rights of their children, in order to enable the parents to perform their duties more effectually and to recompense them for their care and trouble in the discharge of those duties. However, there is nothing in the English decisions to suggest that at common law a child could not sue a parent for a personal tort.

Blackstone commented on the subject as follows: "The ancient Roman laws gave the father a power of life and death over his children; upon this principle, that he who gave had also the power of taking away. But the rigour of these laws was softened by subsequent constitutions * * *. But still they maintained to the last a very large and absolute authority: for a son could not acquire any property of his own during the life of his father; but all his acquisitions belonged to the father, or at least the profits of them, for his life. The power of a parent by our English laws is much more moderate; but still sufficient to keep the child in order and obedience. He may lawfully correct his child, being under age, in a reasonable manner; for this is for the benefit of his education." 1 Sharswood's Blackstone's Commentaries, Book 1, (page 451) *452.

In 1816 Judge Reeve of Connecticut, the earliest American writer on the subject, expressed the opinion that parents have the power to chastise their children moderately, but if a parent chastises a child unreasonably and maliciously, he can be held liable in an action by the child for battery. Thus, he said that if it should appear to the triers that the parent acted conscientiously and from motives of duty, no verdict ought to be found against him, even though the punishment appeared to be unreasonably severe and not proportioned to the

offense; but if it should appear that the parent punished unreasonably and maliciously, then he ought to be liable for damages. Reeve, Domestic Relations, 287-289.

In 1882 Professor Schouler urged that suits in tort by child against parent for maltreatment should be discouraged after the child becomes of age. He contended that a cruel parent ought to be punished at the time of his cruelty, and if necessary should forfeit custody of the child as well as suffer criminal penalties; but he considered that it was not good policy to allow a child, after attaining his majority and is free from parental control, to institute a suit for damages "for some stale injury, real or imagined, referable to that period." Schouler, Domestic Relations, 3d Ed., sec. 275.

Judge Cooley saw no reason in principle why an action could not be maintained by a minor child against a parent unless it should invite a contest of the parent's authority. Cooley, Torts, 1879 Ed., 171. Sir Frederick Pollock likewise wrote that parents are protected in the exercise of summary force or restraint if they act with good faith and in a reasonable and moderate manner. He also noted that "modern civilization has considerably diminished the latitude of what judges or juries are likely to think reasonable and moderate correction." Pollock, Torts, 1887 Ed., 83.

In 1891 the Supreme Court of Mississippi handed down its opinion that a minor child could not maintain an action in tort against the parent for wrongful confinement in an insane asylum. This opinion, *Hewlett v. George*, 68 Miss. 703, 9 So. 885, 13 L. R. A. 682, 684, was destined to have far-reaching influence. It concluded by saying that a minor child has no right to assert any claim to civil redress for personal injuries suffered at the hands of the parents; and that the State, through its criminal laws, will give the child protection from parental violence and wrongdoing, and this is all the child can be heard to demand. In other words, the Court made no distinction between (1) acts of negligence due to an error of judgment and (2) wilful, wanton and malicious acts.

The opinion did not cite any judicial decision or any other authority, but for forty years it was followed by the Courts in other States.

In 1903 the Mississippi decision was followed by the Supreme Court of Tennessee in *McKelvey v. McKelvey*, 111 Tenn. 388, 77 S. W. 664, 64 L. R. A. 991. There a minor daughter had been severely injured by cruel and inhuman treatment inflicted by her father and stepmother. But the Court said that, even though the parental power may be abused, a child has no remedy in civil action against the parent for personal injuries inflicted.

The question next came before the Supreme Court of Washington in 1905 in *Roller v. Roller*, 37 Wash. 242, 79 P. 788, 68 L. R. A. 893. Here the father had been convicted of rape on his 15-year-old daughter and had been sentenced to the penitentiary. It was argued that while the general rule prohibited actions in tort by children against parents on the ground that litigation might disturb the family relations, the purpose of the rule should be looked to as the test of its scope and limitations; and it was urged that the family relations in that case had already been disturbed in so rude a manner that they could never again be adjusted. The Court, however, refused to make any modification of the Mississippi rule.

In 1925 the Supreme Court of Rhode Island, in deciding that a minor child could not maintain a suit against a parent for personal injuries suffered as a result of the parent's negligence in the operation of an automobile, took occasion to question the decision handed down in the State of Washington in the rape case, commenting that "it might be urged with apparent reason that the father by his wicked act had destroyed the family relation, had invaded the absolute rights of the child, and had emancipated her." *Matarese v. Matarese*, 47 R. I. 131, 131 A. 198, 200, 42 A. L. R. 1360.

The absolute rule originating in Mississippi was repudiated by the Supreme Court of New Hampshire in

1930 in its landmark opinion in *Dunlap v. Dunlap*, 84 N. H. 352, 150 A. 905, 909, 910, 71 A. L. R. 1055, 1063. In that case Chief Justice Peaslee said: "On its face, the rule is a harsh one. It denies protection to the weak upon the ground that in this relation the administration of justice has been committed to the strong and that authority must be maintained. It should not be tolerated at all except for very strong reasons; and it should never be extended beyond the bounds compelled by those reasons. * * * The father who brutally assaults his son or outrages his daughter ought not to be heard to plead his parenthood and the peace of the home as answers to an action seeking compensation for the wrong. The relation is rightly fortified by certain rules. Outside that relation, the rules are inapplicable; and any attempt to apply them leads to irrational and unjust results."

Soon after the New Hampshire decision, the Court of Appeals of Maryland in *Schneider v. Schneider*, 160 Md. 18, 152 A. 498, 72 A. L. R. 449, held that a parent cannot sue a minor child for injuries sustained in an accident wherein the parent was riding in an automobile operated by the child. Chief Judge Bond, who delivered the opinion of the Court, observed that the majority of the Courts in other States had followed the Mississippi rule that a minor child can never maintain an action in tort against its parent; but he cited the New Hampshire decision, and also remarked that the question whether the parent can sue the child differs somewhat from the question whether the child can sue the parent.

In *Yost v. Yost*, 172 Md. 128, 134, 190 A. 753, this Court held that a minor child cannot maintain a suit in equity against the father for failure to provide support, or for neglect. The Court stated that, on the ground of public policy, a parent cannot be held liable for acts of passive negligence incident to the parental relation.

In the case at bar the illegitimate daughter alleges in her declaration that her father murdered her mother and then committed suicide one week later. In these

circumstances there can be no basis for the contention that the daughter's suit against her father's estate would be contrary to public policy, for the simple reason that there. is no home at all in which discipline and tranquillity are to be preserved. It is conceded, of course, that parental authority should be maintained. It is also conceded that a child should forego any recovery of damages if such recovery would unduly impair discipline and·destroy the harmony of the family. Ordinarily, the parent is not liable for damages to the child for a failure to perform a parental duty, or for excessive punishment of the child not maliciously inflicted, or for negligent disrepair of the home provided by the father. These acts ·grow out of and pertain to the relation of parent and child. But when, as in this case, the parent is guilty of acts ·which show complete abandonment of the parental relation, the rule giving him immunity from suit by the child, on the ground that discipline should be maintained in the home, cannot logically be applied, for when he is guilty of such acts he forfeits his parental authority and privileges, including his immunity from suit. Justice demands that a minor child shall have a right of action against a parent for injuries resulting from cruel and inhuman treatment or for malicious and wanton wrongs.

It has been argued that a minor child should not have a right to civil action for wrongful conduct of its parent because (1) to subject the parent to uncontrolled and capricious suits for damages would be subversive of discipline and therefore not for the best interests of the child, and (2) a parent may safely be entrusted with broad powers and immunities because of the strong check of natural love and affection. Professor McCurdy of Harvard gave the following answer to the argument: "In answer it may be said that this argument improperly covers acts which are outside the field of parental discipline and control, that if this disciplinary relation enjoys complete civil immunity, it is the only one that does, and that in one respect, the recognition of causes of action for promised wages, the disciplinary immunity of

the parent has been discharged. The opinion may be ventured, moreover, that filial respect and subjection would prove a greater deterrent to the bringing of actions than parental love and civil immunity to abuse of parental discretion." McCurdy, Torts Between Persons in Domestic Relations, 43 Harvard L. Rev., 1030, 1076, 1077.

In considering this case we are treating the father as if he were a legitimate parent and are holding that he has no immunity from this suit. We have no occasion now to decide whether under other circumstances the father of an illegitimate child would have any immunity at all against a suit by such child.

At the beginning of this century, the numerical weight of authority in this country supported the rule that a plaintiff cannot recover for nervous affections unaccompanied by contemporaneous physical injury. In 1909, however, this Court adopted the rule that where the wrongful act complained of is the proximate cause of the injury and the injury ought to have been contemplated in the light of all the circumstances as a natural and probable cause thereof, the case should be left to the jury. *Green v. T. A. Shoemaker & Co.*, 111 Md. 69, 81, 73 A. 688, 23 L. R. A., N. S., 667. The law is now established in Maryland, in accordance with the modern trend of the descisions, that "a plaintiff can sustain an action for damages for nervous shock or injury caused, without physical impact, by fright arising directly from defendant's negligent act or omission, and resulting in some clearly apparent and substantial physical injury as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state." *Bowman v. Williams*, 164 Md. 397, 404, 165 A. 182, 184. Generally, the commission of murder or suicide is not a tort against an eyewitness. But in this case the declaration alleges shock, mental anguish and permanent nervous and physical injuries. No particulars were demanded, and there is now no question before this Court whether the injuries are sub-

70

stantial or whether the facts are sufficient to constitute a tort and establish the requisite causal relation between the conduct and the results.

As we hold that the child in this case has a right of action, we must reverse the judgment entered in favor of defendant and remand the case for further proceedings.

*Judgment reversed and case remanded, with costs.*