## DEBORAH MASON MONTZ *v.* NICHOLAS A. MENDALOFF ET UX.

[No. 1358, September Term, 1977.]

*Decided July 18, 1978.*

The cause was argued before GILBERT, C. J., and MELVIN and COUCH, JJ.

*Jacob Matz,* with whom was *Gerald H. Cooper* on the brief, for appellant.

*David M. Buffington* and *Peter G. Ashman,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellees.

COUCH, J., delivered the opinion of the Court. GILBERT, C. J., filed a concurring opinion at page 226 *infra.*

Appellant, Deborah Mason Montz, nee Mason, was injured while riding as a passenger in an automobile owned by her stepfather, Nicholas A. Mendaloff, and being operated by her mother, Althea D. Mendaloff. At the time of the accident appellant was not quite seventeen years of age, single, living with the Mendaloffs, and unemployed; since the accident, however, she has married and no longer lives with her parents. She brought an action in the Superior Court of Baltimore City against the Mendaloffs (appellees), alleging negligence and gross negligence on the part of her mother as being the cause of her injuries. For reasons not here relevant the case was transferred to the Circuit Court for Carroll County. There, appellees pleaded and moved for summary judgment, claiming immunity under the "parent-child immunity doctrine" set out in *Sanford v. Sanford,* 15 Md. App. 390, 290 A. 2d 812 (1972), and previous Maryland cases. The court, after hearing, held the case *sub curia* and ultimately granted appellees' motion. After judgment was entered against appellant, she filed a timely appeal with this Court.

Appellant mounts a three-pronged attack on the trial court's ruling by stating:

(1) the action is not barred by the parental immunity rule as previously articulated by the Court of Appeals;

(2) the action is not barred by public policy;

(3) the rule, in any event, would not bar an action based on gross negligence.

### (1) and (2)

In our view, questions 1 and 2 are interrelated and may be considered together conveniently. Appellant first argues that there is no case wherein the Maryland Court of Appeals has declared the parental immunity doctrine to be applicable to an action based on facts and circumstances similar to those

in the instant case. While we agree that this is true, we think appellant can find little solace because of what the Court of Appeals has said in analogous cases points the way for our ruling.

Chief Judge Bond, speaking for the Court in *Schneider v. Schneider,* 160 Md. 18, 152 A. 498 (1930), a case where a mother sued two sons for personal injuries sustained by her while riding as a passenger in an automobile owned by one son and driven by another, stated:

> "It appears that a majority of courts in which the question has arisen have decided that a minor child cannot maintain such an action against its parents . . . ."

*Id.* at 22, 152 A. at 499.

In *Yost v. Yost,* 172 Md. 128, 134, 190 A. 753-756 (1937), an action in equity by a minor against his father for support, the Court of Appeals noted:

> "Stated differently, for acts of passive negligence incident to the parental relation, there is no liability. The doctrine is founded upon public policy, . . . ."

The matter was not addressed again until 1951, when the Court decided *Mahnke v. Moore,* 197 Md. 61, 77 A. 2d 923 (1951). This case represented an action by a minor against her deceased father's estate, alleging personal injuries caused by atrocious acts committed by the father in the child's presence. The Court, in part, stated:

> "Ordinarily, the parent is not liable for damages to the child for a failure to perform a parental duty, or for excessive punishment of the child not maliciously inflicted, or for negligent disrepair of the home provided by the father. These acts grow out of and pertain to the relation of parent and child. But when, as in this case, the parent is guilty of acts which show complete abandonment of the parental relation, the rule giving him immunity from suit by the child, on the ground that discipline should be maintained in the home, cannot logically be applied,

for when he is guilty of such acts he forfeits his parental authority and privileges, including his immunity from suit."

*Id.* at 68, 77 A. 2d at 926.

In 1956 the Court of Appeals next met the issue in *Waltzinger v. Birsner,* 212 Md. 107, 128 A. 2d 617 (1956), a case where an 81 year old mother sued her adult son for injuries she received in an automobile accident, allegedly due to his negligence. That Court, in rejecting the son's defense of parent-child immunity, stated in part:

"Here, both the mother and son are free and separate persons having the right to sue and be sued . . . . Here, of course, the son is not a minor."

*Id.* at 126, 128 A. 2d at 627.

That Court has not spoken on the subject since, but this Court has done so twice. In *Latz v. Latz a/k/a Schafer,* 10 Md. App. 720, 272 A. 2d 435 (1971), *cert. denied,* 261 Md. 726, a suit by a father against his minor daughter, as the driver of an automobile, for the death of his wife (her mother) who was riding therein as a passenger, Judge Orth, now of the Court of Appeals, speaking for this Court, stated:

"We feel that the rule of *Schneider* is firmly enough embedded in the law of Maryland as to make inadvisable its abolition by judicial decision and we decline to change it for other than constitutional reasons.

\* \* \*

"In addition we believe it particularly fitting that any change in the parent-child immunity rule should be by legislative action . . . . The legislature in Maryland has been aware of the immunity under the *Schneider* decision for 40 years and has taken no action to change it."

*Id.* at 730, 733-4, 272 A. 2d at 440-1, 442-3.

In *Sanford v. Sanford,* 15 Md. App. 390, 290 A. 2d 812

(1972), an action by a minor against his father for injuries received as a passenger in an automobile driven by the father, it was stated:

> "In regard to reason (3), we discussed "the modern trend establishing such immunity' in *Latz* at 728-734. We found the rule to be firmly enough embedded in the law of Maryland as to make inadvisable its abolition by judicial decision."

We note that with the passage of forty-eight years since *Schneider,* and seven years since *Latz,* the legislature in · Maryland not only has been aware of the immunity doctrine but has seen fit not to change it. We feel it is now more firmly embedded in the law of Maryland and decline to change it.

The answer to appellant's second question regarding public policy is that, until the legislature speaks, there is a public policy against such actions. We have declined to change the rule in an action by a wife against her husband arising out of an automobile accident, where the parties were separated. *See Arch v. Arch,* 11 Md. App. 395, 274 A. 2d 646 (1971).

The Court of Appeals has also rejected the argument that the carrying of liability insurance by the parties should negate the applicability of the immunity rule. *Schneider v. Schneider, supra.* We are not unmindful of the direction being taken by other jurisdictions in this area, especially where the parties are insured. *See Sorensen v. Sorensen,* 369 Mass. 350, 339 N.E.2d 907 (Mass. 1975) and cases cited therein. We decline, however, to follow those jurisdictions, leaving it to the Maryland legislature to make this change if it perceives it to be in the best interest of the people of this State.

### (3)

The last, and probably most troublesome, argument is whether the rule applies in an action between child and parent based on gross negligence. The argument has some persuasiveness because it is conceivable that a set of circumstances could exist wherein one could say that the acts of the parent were grossly negligent and which show a

complete abandonment of the parental relation, or by which it might be said that the parent had forfeited his parental authority and privileges, and thus his immunity from suit, so as to bring the case within the narrow confines of *Mahnke v. Moore, supra.*

Factually this case bears no resemblance to *Mahnke;* there the minor child's father shot her mother, in her presence, with a shotgun, causing a portion of the mother's skull to come to rest on the kitchen table. The father thereafter kept the child with the mother's body for some six days and then drove her to his home in New Jersey where, the next day, he committed suicide in her presence by shooting himself with a shotgun, thereby causing masses of his blood to lodge upon her face and clothing. In the instant case the mother was taking an injured dog to the veterinarian, with appellant and the dog in the back seat of the car. The mother claims the dog, which was in great distress, distracted her in the operation of the car, causing the accident. Appellant claims her mother was going too fast, took her eyes off the roadway, ran through a stop sign, off the traveled portion of the roadway and struck an embankment. There is nothing in the record showing the accident was caused by any action on the mother's part, *indicating her abandonment or forfeiture of her parental authority and privileges.* Indeed, while appellant did allege, in one statement only, that the mother was operating the automobile in a careless, reckless, and grossly negligent manner, her declaration concluded with the statement that appellant's injuries were due *solely* to and by reason of the *negligence* of appellees. Under the alleged facts of this case, we find no error in granting the motion for summary judgment both as to the mother and stepfather,[1] based on the doctrine of parental immunity as it exists in Maryland.

*Judgment affirmed.*
*Costs to be paid by appellant.*

---

1. Clearly the stepfather's liability, as he was not operating or present in the car at the time of the accident, could only be dependent on the mother's own liability. As she was not liable, neither was the stepfather.

*Gilbert, C. J., concurring:*

Deborah Mason Montz, the appellant, has arrived in this Court yelling, "Tauro! Tauro! Tauro!" [1] She, of course, does not refer to the December 7, 1941, attack on Pearl Harbor, but rather to the opinion of Chief Justice Tauro of the Massachusetts Supreme Judicial Court in *Sorensen v. Sorensen,* 369 Mass. 350, 339 N.E.2d 907 (1975). In that case, Chief Justice Tauro stated that children have the same "right to protection and to legal redress for wrongs done them as others enjoy." 339 N.E.2d at 912.

What some see as a doctrine of law that serves the best interest of family unity, but which I perceive to be an antiquated idea that not only fails to accomplish that end, but may well have the opposite effect, was conceived in the minds of the Supreme Court of Mississippi and given birth in *Hewlett v. Ragsdale,* 68 Miss. 703, 9 So. 885 (1891).[2] *Hewlett* involved a female minor who brought suit against her mother for "wilfully, illegally, and maliciously" having the child confined in an insane asylum in order for the mother to secure the property of the child. The Mississippi court, without citing any authority for its position, baldly declared that "[t]he peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrongdoing, and this is all the child can be heard to demand." 68 Miss. at 711, 9 So. at 887.[3] Other American appellate courts, including Maryland, followed *Hewlett. See Schneider v. Schneider,* 160 Md. 18, 22, 152 A. 498, 499 (1930), where

---

1. With apologies to Gordon W. Prange, author of *"Tora! Tora! Tora!"* — Japanese for "Attack! Attack! Attack!"

2. *Hewlett* was decided before both automobiles and automobile insurance.

3. Obviously the Mississippi court of 1891 was unaware of the increasing number of child abuse cases appearing in the courts, hospital emergency rooms and doctors' offices. Some writers on the subject believe that the reported cases are but the visible part of the iceberg, nine tenths of it being unseen.

Chief Judge Bond said that "[i]t appears that a majority of courts in which the question has arisen have decided that a minor child cannot maintain such an action against its parent. . . ." The Court, as Judge Couch notes in the instant case, applied *Schneider* and the dubious holding of *Hewlett*, as well as its off-spring [4] in *Waltzinger v. Birsner*, 212 Md. 107, 125-26, 128 A. 2d 617, 626-27 (1957); *Mahnke v. Moore*, 197 Md. 61, 68, 77 A. 2d 923, 926 (1951); *Yost v. Yost*, 172 Md. 128, 134, 190 A. 753, 756 (1937). We, in three (3) previous decisions, *Sanford v. Sanford*, 15 Md. App. 390, 290 A. 2d 812 (1972); *Arch v. Arch*, 11 Md. App. 395, 274 A. 2d 646 (1971); *Latz v. Latz a/k/a Schafer*, 10 Md. App. 720, 272 A. 2d 435 (1971), *cert. denied*, 261 Md. 726 (1971), have followed the lead of the Court of Appeals.

I agree that we, in the case *sub judice*, based on *stare decisis*, must reach the conclusion that under existing Maryland law a minor may not maintain an action, in tort, for wrongs done to the minor by his or her parent or parents. Were we deciding a virginal issue, however, I would subscribe to the *Sorensen* reasoning rather than *Hewlett*.

Many jurisdictions have departed in whole or in part from the seemingly unfair parental immunity doctrine, and each of them would entertain an action similar to that instituted in the case now before us. *See Sorensen v. Sorensen*, 339 N.E.2d at 911, footnote 5, *infra*, citing cases from Alaska, Arizona, California, Hawaii, Kentucky, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New York, North Dakota, Pennsylvania, Virginia, and Wisconsin. Moreover, there appears to be no barrier in the common law of England that would prevent a minor from asserting an action against his or her parents for a wrong done to the child by the parents. *Mahnke v. Moore*, 197 Md. at 64, 77 A. 2d at 924; *Hastings v. Hastings*, 33 N. J. 247, 255, 163 A. 2d 147, 152 (1960); *Sorensen v. Sorensen*, 339 N.E.2d at 909.

I think the time has come for the Court of Appeals to re-examine the parental immunity doctrine espoused in

---

4. *See* Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905 (1930); Mesite v. Kirchenstein, 109 Conn. 77, 145 A. 753 (1929); Roller v. Roller, 37 Wash. 242, 79 P. 788 (1905); McKelvey v. McKelvey, 111 Tenn. 388, 77 S. W. 664 (1903).

*Schneider, Yost,* and *Mahnke* in the light of the present compulsory automobile insurance law of this State. Perhaps, the Court will now hear the beat of a different drummer than that heard by its predecessors and march with those who have denounced *Hewlett,*[5] at least to the extent of permitting an unemancipated minor to recover in motor tort cases to the limits of his or her parents' automobile liability insurance for injuries occasioned to the minor as a result of the negligence of the parent. By so doing, the Court would lift unemancipated minors from their current status of second class citizens, a position in which they have been thrust by the parental immunity doctrine, and recognize that unemancipated minors have the same rights as everyone else. The majority, in the case *sub judice,* opine that it is up "to the Maryland legislature to make this change [in the law] if it perceives it to be in the best interest of the people of this State." I fail to see why that is necessarily true. The doctrine of parental immunity, as we have seen, was sired in the minds of the Supreme Court of Mississippi, who, serving as mid-wife, delivered it in *Hewlett,* Maryland adopted the doctrine, notwithstanding its questionable parentage, insofar as precedent is concerned. The promulgation of parental immunity from actions by unemancipated minors and its subsequent nutriment have been solely judicial functions. To me there is no valid reason why the branch of government that gave birth to the doctrine cannot lay it to rest when, as here, there exists compulsory automobile liability insurance. I believe it to be inconceivable that the average parent entering into a contract with a motor vehicle liability insurance carrier knows that he is excluding from the

---

5. *See* Sorensen v. Sorensen, *supra;* Rupert v. Stienne, 90 Nev. 397, 528 P. 2d 1013 (1974); Plumley v. Klein, 388 Mich. 1, 199 N.W.2d 169 (1972); Gibson v. Gibson, 3 Cal. 3d 914, 479 P. 2d 648, 92 Cal. Rptr. 288 (1971); Rigdon v. Rigdon, 465 S.W.2d 921 (Ky. 1971); Falco v. Pados, 444 Pa. 372, 282 A. 2d 351 (1971); Smith v. Kauffman, 212 Va. 181, 183 S.E.2d 190 (1971); France v. A.P.A. Transport Corp., 56 N. J. 500, 267 A. 2d 490 (1970); Streenz v. Streenz, 106 Ariz. 86, 471 P. 2d 282 (1970); Petersen v. City & County of Honolulu, 51 Hawaii 484, 462 P. 2d 1007 (1969); Gelbman v. Gelbman, 23 N.Y.2d 434, 245 N.E.2d 192, 297 N.Y.S.2d 529 (1969); Silesky v. Kelman, 281 Minn. 431, 161 N.W.2d 631 (1968); Hebel v. Hebel, 435 P. 2d 8 (Alas. 1967); Nuelle v. Wells, 154 N.W.2d 364 (N.D. 1967); Briere v. Briere, 107 N. H. 432, 224 A. 2d 588 (1966); Goller v. White, 20 Wis. 2d 402, 122 N.W.2d 193 (1963).

protection of the policy his minor children, the ones he ordinarily is most desirous of protecting.

One further comment need be made. Judge Orth, for this Court, in *Latz,* commented:

> "We feel that the rule of *Schneider* is firmly enough embedded in the law of Maryland as to make inadvisable its abolition by judicial decision and *we decline to change it for other than constitutional reasons.*" (Footnote omitted.) (Emphasis supplied.) 10 Md. App. at 730, 272 A. 2d at 440-41.

This Court, in *Latz,* rejected an "equal protection" argument on the basis that all unemancipated minor children are immune to tort actions brought against the minor by his or her parents. *Latz* was decided before automobile insurance became compulsory in this State. Perhaps in view of the present state of the law, the equal protection argument should be revisited. We are, however, precluded from doing so in the case at bar because that issue was not raised in the trial court, Md. Rule 1085, nor was it or could it then be raised for the first time in this Court. Consequently, any revisitation of *Latz*'s equal protection holding will have to await its arrival in this Court properly attired for review.

I concur with the result reached in this case, but I do so with reluctance, for the reasons stated herein.