529 A.2d 365

**William M. IRELAND**

v.

**STATE of Maryland.**

**No. 143, Sept. Term, 1986.**

Court of Appeals of Maryland.

Aug. 6, 1987.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH,* McAULIFFE and ADKINS, JJ.

---

* Couch, J., now retired participated in the hearing and conference of this case while an active member of this Court; after being recalled

McAULIFFE, Judge.

We are here concerned with the punishment that may be imposed following conviction of the common law crimes of assault and battery. William M. Ireland was charged in the District Court of Maryland sitting in Anne Arundel County with committing a battery upon his estranged wife by hitting and kicking her. He demanded a jury trial, causing the case to be removed to the circuit court where he was convicted. Judge Morris Turk imposed a sentence of three years imprisonment, from which Ireland appealed. The Court of Special Appeals affirmed the conviction and sentence in an unreported opinion and we granted certiorari to consider Petitioner's claim that the courts of this State have no authority to impose a sentence of imprisonment for the crimes of assault or battery.

Petitioner's argument rests upon three major premises: 1) assault and battery are common law offenses in this State, for which the Legislature has provided no particular penalty; 2) a sentence of imprisonment was not a legally permissible sanction for these crimes according to the common law of England as of July 4, 1776; and, 3) this Court does not have authority to modify the common law by providing for a penalty that did not exist at the time the common law was adopted in this State. Petitioner's first contention is clearly correct, and therefore we turn to the remaining contentions which we shall discuss in reverse order.

## I.

Article 5 of the Declaration of Rights provides:

That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such of English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which, by experi-

---

pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

ence, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity; ... except such as may have since expired, or may be inconsistent with the provisions of this Constitution; subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State....

■ The determination of the nature of the common law as it existed in England in 1776, and as it then prevailed in Maryland either practically or potentially, and the determination of what part of that common law is consistent with the spirit of Maryland's Constitution and her political institutions, are to be made by this Court.

Whether particular parts of the common law are applicable to our local circumstances and situation, and our general code of laws and jurisprudence, is a question that comes within the province of the Courts of justice, and is to be decided by them. The common law, like our Acts of Assembly, are subject to the control and modification of the Legislature, and may be abrogated or changed as the General Assembly may think most conducive to the general welfare; so that no great inconvenience, if any, can result from the power being deposited with the judiciary to decide what the common law is, and its applicability to the circumstances of the State, and what part has become obsolete from *non-user* or other cause. *State v. Buchanan,* 5 H. & J. 317, 365–66 (1821).

Because of the inherent dynamism of the common law, we have consistently held that it is subject to judicial modification in the light of modern circumstances or increased knowledge. *Harris v. State,* 306 Md. 344, 357, 509 A.2d 120 (1986); *Kelley v. R.G. Industries, Inc.,* 304 Md. 124, 497 A.2d 1143 (1985). Equally well established is the principle that the common law should not be changed contrary to the public policy of this State set forth by the General Assembly. *Kelley, supra,* 304 Md. at 141, 497 A.2d 1143; *Harrison v. Mont. Co. Bd. of Educ.,* 295 Md. 442, 460–61, 456 A.2d 894 (1983). In the area of civil common

law this Court has not only modified the existing law but also added to the body of law by recognizing new causes of action. *Kelley, supra,* (recognizing cause of action against manufacturers or marketers for damages caused by "Saturday Night Special" handguns); *Boblitz v. Boblitz,* 296 Md. 242, 462 A.2d 506 (1983) (permitting negligence action by one spouse against another); *Moxley v. Acker,* 294 Md. 47, 447 A.2d 857 (1982) (deleting force as a required element of the action of forceable detainer); *Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981) (recognizing tort of abusive or wrongful discharge); *Lusby v. Lusby,* 283 Md. 334, 390 A.2d 77 (1978) (deleting the defense of interspousal immunity in the case of outrageous intentional torts); *Harris v. Jones,* 281 Md. 560, 380 A.2d 611 (1977) (recognizing tort of intentional infliction of emotional distress).

Petitioner acknowledges the breadth of this Court's decisions affecting the civil common law, but contends that this civil experience cannot serve as precedent in the common law of crimes and punishments. He argues that the regulation of the criminal law, and particularly the establishment of new offenses and the fashioning of appropriate sentencing alternatives, should be left entirely to the Legislature. Our cases to date have not drawn the distinction suggested by Petitioner. This Court has often cited its general authority to fashion and mold the common law when dealing with criminal cases. A brief summary of our more recent cases in this area will indicate the broad spectrum of modifications we have made to the criminal common law. *Robinson v. State,* 307 Md. 738, 517 A.2d 94 (1986) (holding that the "depraved heart" species of common law murder does not require that more than one life be placed in danger); *Harris v. State, supra,* (acknowledging changes in the common law right of allocution since 1776); *Jones v. State,* 302 Md. 153, 486 A.2d 184 (1985) (changing the common law to allow an accessory to be convicted of a greater crime than that of which the principal was convicted); *Evans v. State,* 301 Md. 45, 481 A.2d 1135 (1984), *cert.*

*denied, sub nom Grandison v. Md.,* 470 U.S. 1034, 105 S.Ct. 1411, 84 L.Ed.2d 795 (1985) (changing common law of former jeopardy to permit successive prosecution for the same offense by separate sovereigns); *Lewis v. State,* 285 Md. 705, 404 A.2d 1073 (1979) (changing common law to permit prosecution of accessories before trial or conviction of principal); *Pope v. State,* 284 Md. 309, 396 A.2d 1054 (1979) (abolishing common law offense of misprision of felony because inconsistent with contemporary standards).

Petitioner suggests that these modifications of the common law of crimes and punishment have largely affected procedural matters, and where substance has been involved the action has been one of subtraction and not one of addition, i.e. that we have declined to recognize crimes, elements or principles affecting prosecution, but we have never created an offense or recognized a punishment that was unknown to the common law. For the purposes of discussion, and to avoid the difficulty of distinguishing matters of substance from those of procedure, we accept for the moment Petitioner's characterization of our previous role in the development of the criminal common law. This historical precedent could represent, as Petitioner suggests, an implicit recognition that it is exclusively within the domain of the Legislature to create new crimes and punishments. On the other hand, it could represent judicial self-restraint in an area of joint authority, perhaps in recognition of the active role taken by the Legislature in this field since at least 1809.[1] Or, it could simply be a product of the fact that we have never been asked to accomplish such a modification. As intellectually interesting as these questions may be, we find no need to answer them in this case. Not one of our earlier cases dealing with the permitted punishment for assault and battery indicates that this Court was engaged in the process of modifying existing common

---

1. Chapter 138 of the 1809 Laws of Maryland, often called The Penitentiary Act, was the precursor to what is now Art. 27 of the Code, and dealt comprehensively with crimes, punishment, and the construction and operation of a penitentiary.

law. Whenever this Court has exercised that power, it has been careful to point out what the common law had been, why a change was necessary, and the sources of the Court's authority to accomplish the change. No such discussion may be found in the many decisions of this Court discussing the available sentences for the crimes of assault and battery. We are persuaded that the resolution of this case turns not upon the power of this Court to modify the common law, but upon its unquestioned authority to determine and interpret that law.

## II.

We turn to a discussion of the common law of punishments of misdemeanors, particularly of assault and battery, in mid-eighteenth century England. Petitioner's principal contention is that the only sanction permitted was a fine. Alternatively, he argues that if imprisonment was permitted, it could not exceed two years. The State contends that a judge in England or colonial America possessed broad discretion in this type of case, including the authority to sentence to imprisonment and to impose a fine, without specific limitation as to either. Our examination of the cases and of the writings of legal commentators and historians discloses the existence of respectable authority supporting the argument made by each party, but we believe the more persuasive authority supports the State's view of the matter.

Petitioner cites several authorities for the proposition that English common law subjected a person guilty of an assault or battery to an action for damages at the suit of the party injured and to an indictment at the suit of the king "wherein he shall be fined according to the heinousness of the offense." 1 W. Hawkins, *Pleas of the Crown* 264 (6th ed. 1788); 1 M. Bacon, *New Abridgment of the Law* 156 (4th ed. 1778); 1 R. Burn, *The Justice of the Peace and Parrish Officer* (10th ed. 1766); F. Pulton, *De Pace Regis et Regni* (1610); E. Wingate, *The Body of the Common Law of England* 24 (1655) (Reprint). Petitioner also

draws upon an American treatise of 1815 as support for this proposition. In J. Hall, *The Office and Authority of a Justice of the Peace in the State of Maryland* 27 (1815), the author adopts the statement of W. Hawkins, *Pleas of the Crown, supra,* concerning the civil and criminal remedies for assault and battery.

Moreover, Petitioner argues, the enactment in England and in this country in the eighteenth and nineteenth centuries of statutes providing for specific terms of imprisonment for the commission of aggravated assaults furnishes support for his position, for if unlimited imprisonment could be imposed for all assaults it would be unnecessary to provide specific penalties for some of them. In *Manley v. State,* 7 Md. 135 (1854), our predecessors referred to a two count indictment charging assault with intent to murder and assault and battery respectively, and said, at 148:

> The [charge] set out in the first count "is defined and prohibited" by the Act of 1809, ch. 138, *State v. Dent, 3 G. & J. 8,* by which a severer punishment is prescribed than at common law.

Standing in opposition to Petitioner's contention is an unbroken line of cases extending back just over a century. This Court has consistently held that where the Legislature has not provided a penalty for common law misdemeanors such as assault and battery, the punishment may be by fine, or imprisonment, or both and that the only limitation upon the number of years to which one may be sentenced is, ordinarily, the prohibition against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution and Articles 16 and 25 of the Maryland Declaration of Rights. *Street v. State,* 307 Md. 262, 265–66, 513 A.2d 870 (1986); *Simms v. State,* 288 Md. 712, 714, 421 A.2d 957 (1980); *Gleaton v. State,* 235 Md. 271, 277–78, 201 A.2d 353 (1964); *Duff v. State,* 229 Md. 126, 127, 182 A.2d 349, *cert. denied,* 371 U.S. 898, 83 S.Ct. 199, 9 L.Ed.2d 130 (1962); *Burley v. State,* 226 Md. 94, 96–97, 172 A.2d 394 (1961); *Yantz v. Warden,* 210 Md. 343, 351, 123 A.2d 601, *cert. denied,* 352 U.S. 932, 77 S.Ct. 236, 1 L.Ed.2d 167

(1956); *Roberts v. Warden,* 206 Md. 246, 111 A.2d 597 (1955); *Heath v. State,* 198 Md. 455, 467, 85 A.2d 43 (1952); *Apple v. State,* 190 Md. 661, 668, 59 A.2d 509 (1948); *Mitchell v. State,* 82 Md. 527, 534, 34 A. 246 (1896); *State v. Falkenham,* 73 Md. 463, 466, 21 A. 370 (1891); *Hannon v. State,* 63 Md. 123, 126 (1885).

By ch. 120 of the Act of 1882 the Legislature specified whipping [2] as a permitted punishment for a "brutal" battery committed by husband upon his wife. This Court made it clear, however, in *Hannon v. State, supra,* that this punishment was in addition to the common law sanction of imprisonment.

In *Mitchell v. State, supra,* 82 Md. at 529, 34 A. 246, appellant's counsel offered the interesting commentary that the practice in Baltimore City in the late nineteenth century was "to give not more than two years in jail for any misdemeanor, the punishment of which was not provided for in the Code." Counsel did concede that the practice in the counties may have been different, and that in 1894 Chief Judge Harlan of the Supreme Bench of Baltimore City had imposed a sentence of five years imprisonment for a misdemeanor.[3] And in the very early case of *State v. Falkenham, supra,* 73 Md. at 466, 21 A. 370, this Court held that where the Legislature created a new offense of

---

2. Whipping was not unknown as a common law punishment for assault. At the 1667 sitting of the Provincial Court of Maryland Thomas How was found guilty of assaulting the High Sheriff of Calvert County during the attempted service of a writ of attachment, and was sentenced to "forty stripes on the bare back." How's wife, who had assisted him in the assault, had her sentence of forty stripes remitted because she was pregnant, but the court ordered that she be tied to the opposite side of the tree during the whipping of her husband. 57 *Archives of Maryland—Provincial Court Proceedings,* at 198–99 (1667).

3. From another source we learn that in 1903 Judge John Upshur Dennis of the Supreme Bench affirmed the sentence of five years imprisonment imposed by a Justice of the Peace in Baltimore City for the crime of assault. *See* A. Thomas, *Procedure in Justice Cases* § 373, at 292–95 & n. 3 (1906), commenting on the case of *Hebron v. State* which was reported in *The Daily Record* of September 3, 1903.

cruelty to animals but did not prescribe the penalty for its violation, "it is left to the courts to impose the common law punishment of fine, or imprisonment in jail, or both, according to the circumstances of each case as it arises."

Additionally, we find in ch. 201 of the 1835 Laws of Maryland legislative recognition of the authority of judges to impose a sentence of imprisonment upon conviction of assault and battery. As we have noted, ch. 138 of the Laws of 1809 dealt comprehensively with crimes and punishments, but it did not effect any change in the common law of assault and battery. By the Act of 1835, the Legislature created a first tier trial court to be presided over by Justices of the Peace, and to be styled the District Court. By § 8 of the Act the District Court was given criminal jurisdiction in cases of assault and battery, subject only to the right of the defendant to demand trial in the County Court. Significantly, the judges of the District Court were given the power to "inflict punishment by fine and imprisonment" in such cases. Because no statute to that time had prescribed the penalty for simple assault and battery, we consider this enactment a clear recognition of the permissible common law sanctions for this type of offense. To hold otherwise, i.e. that the statute represented an initial grant of authority to imprison for these offenses, would lead to the illogical result that the Legislature had granted the power to imprison for this offense to Justices of the Peace but withheld it from judges of the higher County Courts.

The proposition that the common law punishment for misdemeanors of this type included imprisonment as well as fine is also supported by a number of respected scholars. Blackstone, in the fourth volume of his *Commentaries on the Laws of England,* at 6 states:

> [I]n the case of battery, or beating another, the aggressor may be indicted for this at the suit of the king, for disturbing the public peace, and be punished criminally by fine and imprisonment: and the party beaten may also have his private remedy by action of trespass for the

injury, which he in particular sustains, and recover a civil satisfaction in damages.

In 2 Bishop, *Criminal Law* 39 (9th ed. 1923), the author said:

Assault is a misdemeanor, not a felony; therefore at common law it is punishable by fine and imprisonment, to which may be added bonds to keep the peace.

And in the same volume, at 32, it is said:

Still, from early times, when misdemeanors were punished by whatever fine or imprisonment the judge might deem it right to impose, it has been the judicial habit to look upon assaults as more or less aggravated by such attendant facts as appealed to the discretion for a heavy penalty.... An assault is deemed to be more or less enormous according to the facts of the particular transaction.

*See also,* J. Beattie, *Crime and the Courts in England 1660–1800,* 549 (1986), noting that in the second quarter of the eighteenth century in England persons convicted of assault continued to be sentenced to terms of imprisonment with some regularity although that was not the punishment of choice.[4] An early encyclopedia of American law stated: "[A]t common law, an assault, or an assault and battery, may be punished either by fine or imprisonment or by

---

4. Professor Beattie also notes that the trend toward the use of imprisonment as a punishment began in earnest in England about the time of the Revolution. This is attributed in part to the loss of the sanction of "transportation" of offenders to the Colonies, but in large part was due to a changing philosophy of punishment and reformation. J. Beattie, *Crime and the Courts in England 1660–1800,* 520–618 (1986). Colonial America was probably slower to embrace imprisonment as a punishment for practical and economic reasons. The work force was limited, and the Colonists could ill afford the loss of an able bodied person, much less the expense of building large "gaols" and maintaining prisoners. Utilization of penitentiaries was unknown in this country until the turn of the century. N. Teeters, *The Cradle of the Penitentiary,* at 1 (1955). The paucity of cases of imprisonment for simple assault and battery during that period is probably better explained by the economics and penal philosophy of the time than by any concern on the part of the judges that they lacked the power to imprison for those offenses.

both." 5 C.J. *Assault and Battery* § 363 (1916). Recently, *see* 6A C.J.S. *Assault and Battery* § 130 (1975). In Maryland, Professor Lewis Hochheimer wrote:

> The common-law punishment for treason and felony is death; for misdemeanors, fine and imprisonment, or either, at the discretion of the court.
>
> L. Hochheimer, *The Law of Crimes and Criminal Procedure* § 344 (1897).

To the same effect *see* A. Thomas, *Procedure in Justice Cases* § 373 (1906).

Other states have considered the question and have concluded that the common law punishment for assault and battery and similar misdemeanors includes imprisonment. *Cornelison v. Commonwealth*, 84 Ky. 583, 2 S.W. 235 (1886); *Rell v. State*, 136 Me. 322, 9 A.2d 129 (1939); *O'Neil v. Commonwealth*, 165 Mass. 446, 43 N.E. 183 (1896); *State v. McNeil*, 75 N.C. 15 (1876); *State v. Charles*, 107 S.C. 418, 93 S.E. 136 (1917), and *Ex Parte Garrison*, 36 W.Va. 686, 15 S.E. 417 (1892). In *Cornelison, supra,* the Court of Appeals of Kentucky considered the precise question that is before us. There the defendant, an attorney, was found to have assaulted and beat a judge with a stick and cowhide and was sentenced to imprisonment for three years and a fine of one cent. He appealed, contending that at common law an assault and battery was punishable only by fine. The Kentucky court considered authorities from both sides of the Atlantic, and concluded:

> At common law the judge might fine or imprison at his discretion, or both fine and imprison; and, when no aggravating circumstances attended the commission of the offense, the judges there, as the juries here, impose the slightest penalty, which is the fine, because, in legal contemplation, a simple assault did not demand severer punishment.
>
> 2 S.W. at 239.

■ Finally, on this point we have the explicit guidance of the House of Lords in *Verrier v. Director of Public Prose-*

*cutions,* 2 App.Cas. 195, 3 All E.R. 568 (1966). Verrier claimed, as does Petitioner here, that the penalty of imprisonment could not be imposed upon conviction of a common law misdemeanor, or in the alternative that imprisonment must be limited in such cases to two years. Lord Pearson, writing for the House of Lords stated:

It was contended that there never has been at common law, although admittedly there has been under statutes, any power to impose imprisonment (at any rate for a misdemeanour) for any longer term than two years. Counsel gave an interesting outline of the history of imprisonment. He said that in early times it was not treated as punishment in itself but was used in aid of the execution of punishments: for instance, if the defendant was ordered to pay a fine he might be kept in prison till the fine was paid, or if he was sentenced to be put in a pillory on several specified days he would be kept in prison for that purpose. In Tudor times, however, imprisonment came to be used as a punishment both by the Court of Star Chamber, and under statutory provisions by other courts. For instance, the statute 5 Eliz. 1, c. 9, ss. 4 and 6, provided for persons convicted of procuring or committing perjury being punished by imprisonment for six months and by other penalties. At a later stage the courts were imposing imprisonment as a punishment, and were doing so by virtue of assumed common law power without statutory provision. There is no authority to support the contention on behalf of the appellant that the common law power to impose imprisonment as a punishment was limited to a maximum of two years or by any other fixed term. There is authority to the contrary, showing that the length of the term of imprisonment was at large and in the discretion of the court.

2 App.Cas. at 217.

The House of Lords, after referring to a number of authorities and precedents, concluded that the sentence of imprisonment was proper and in accordance with the early common law. As Judge Lowe once said for the Court of Special

Appeals, "[w]hile we are not bound by current opinions of the House of Lords, its view of what comprised the elements of its common law prior to 1776 is hard to gainsay." *Pope v. State*, 38 Md.App. 520, 530, 382 A.2d 880 (1978).

■ We conclude that our predecessors have made no attempt to modify the common law by adding a form of punishment, but rather have correctly and consistently interpreted the common law to include the sanction of imprisonment as an allowable punishment for the crimes of assault and battery.

■ Petitioner's alternative contention, that imprisonment must in any event be limited to two years, is equally without merit. As noted above, a similar contention was made in *Verrier v. Director of Public Prosecutions, supra,* and was there rejected. 2 App.Cas. at 220–21. The House of Lords acknowledged that during the second half of the nineteenth century and the first half of the twentieth century there had grown up a general practice in England of limiting imprisonment to not more than two years, but explained that practice by the fact that the separate punishment of "penal servitude" was generally considered appropriate for a longer term of incarceration. As the House of Lords pointed out, that practice did not affect the right of the courts to give longer sentences of imprisonment for common law misdemeanors. We have no history of a similar practice in this country, and we would not be bound by a change in the common law of England occurring after 1776. Petitioner's final argument, that the action of the Legislature establishing a penalty of not less than two nor more than ten years imprisonment for certain aggravated assaults, ch. 138 of the 1809 Laws of Maryland, somehow fixes a limit of two years for simple assault and battery, also is unavailing. We held in *Gleaton v. State, supra,* 235 Md. at 277, 201 A.2d 353, that the enactment of aggravated assault statutes could not be construed as expressing a legislative intent to limit sentences for simple assaults.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.