550 A.2d 947

Niki HATZINICOLAS et al.

v.

Nicholas PROTOPAPAS et al.

No. 2, Sept. Term, 1988.

Court of Appeals of Maryland.

Dec. 9, 1988.

Gerard P. Uehlinger, Lentz, Hooper, Jacobs & Blevins, P.A., on brief, Baltimore, for petitioners.

Daniel Karp, Allen, Thieblot & Alexander, Robert J. Thieblot, Anne M. Hrehorovich, on brief, Baltimore, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

RODOWSKY, Judge.

"The doctrine usually called the parent-child immunity rule exists in Maryland." *Frye v. Frye,* 305 Md. 542, 543, 505 A.2d 826, 827 (1986). The immunity includes actions sounding in negligence. *Id.* at 567, 505 A.2d at 839. In this negligence action an unemancipated infant sues the business partner of one of the infant's parents and alleges negligence arising out of the conduct of the partnership business. The Court of Special Appeals extended parental immunity to the defendant. *Hatzinicolas v. Protopapas,* 73 Md.App. 271, 533 A.2d 1311 (1987). In so doing that court was persuaded by one aspect of the rationale in *David v. David,* 161 Md. 532, 157 A. 755 (1932) which held that a wife could not maintain a negligence suit against the partnership of which her husband was a member. For reasons hereinafter explained we conclude that parent-child immunity should not be extended to a parent's partner or partnership and we disapprove of the implications to the contrary in *David.*

The record on which the legal issue is presented consists of the complaint and admissions of fact. Petitioner, the infant plaintiff, Niki Hatzinicolas (Niki), who was born October 20, 1983, is the daughter of Evgenia Hatzinicolas (Evgenia) and Michael Hatzinicolas (Michael). Niki resides with both of her parents. Michael and the respondent, Nicholas Protopapas (Protopapas), were partners in a business known as Hopkins Carry Out. The two partners had no written partnership agreement. They purchased an automatic slicing machine which was operated on the premises of their partnership business. At the machine's rear were a rotating wheel and chain mechanism normally covered by a metal plate. The complaint stated that

"[o]n or about December 4, 1984, while the [slicing machine] was in use as an automatic slicer, the minor Plaintiff was on the premises of Hopkins Carry Out, when she went to the rear of the shop and placed her right hand on or near the chain and gears of the [slicing machine]. Her ring-finger and middle finger were forced

into the gears, the metal guard of the [slicing machine] having fallen off or otherwise not being present on the back of the machine at that time."

Niki, by Evgenia, her mother and "next friend", sued Protopapas "t/a Hopkins Carry Out." The plaintiff alleged that "Protopapas t/a Hopkins Carry Out was negligent by failing to maintain the establishment in a proper and safe manner for its invitees, that [Protopapas] knew or should have known of the dangerous condition of the [slicing machine], should have maintained additional protection or barriers between persons such as Plaintiff and the [slicing machine], and was in other respects negligent."

Protopapas obtained summary judgment based on parent-child immunity.[1] Following affirmance of the judgment by the Court of Special Appeals, we granted the plaintiff's petition for certiorari.

■ Our analysis begins by construing the complaint as fleshed out by the admitted facts. The theory of liability is that the defendant's duty arises as a possessor of land, or of chattels, or both. The admissions of fact make clear that the possession and alleged breach of duty are by Protopapas and by Michael, as partners and joint tortfeasors. The claim, however, is asserted only against Protopapas. The nonjoinder is permissible. Under the Uniform Partnership Act, Md.Code (1975, 1985 Repl.Vol.), Title 9 of the Corporations and Associations Article (CA), the tort liability of partners is joint and several. *See* CA §§ 9–305 and 9–307(1).[2] Indeed, under the liability theory asserted, even

---

**1.** The plaintiff had also sued the alleged manufacturer and distributor of the slicing machine. The circuit court certified the judgment in favor of Protopapas for immediate appeal under Md.Rule 2–602. We shall speak of Protopapas as if he were a sole defendant.

**2.** In relevant part those sections provide as follows:

"§ 9–305. **Partnership bound by partner's wrongful act.**

Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership ... loss or injury is caused to any person, not being a partner in the partner-

though any negligence of Protopapas and Michael is necessarily concurrent, the plaintiff may maintain the action without suing every joint tortfeasor. *See Carroll v. Kerrigen,* 173 Md. 627, 632, 197 A. 127, 128 (1938); *Gordon v. Opalecky,* 152 Md. 536, 550, 137 A. 299, 304 (1927); *Walters v. Baltimore & O.R.R.,* 120 Md. 644, 657–58, 88 A. 47, 52 (1913); *Diamond State Tel. Co. v. Blake,* 105 Md. 570, 572, 66 A. 631, 632 (1907).

The plaintiff's description of Protopapas as a person "t/a Hopkins Carry Out" does not convert this claim into one asserted against the partnership. Maryland has a "common name" statute. *See* Md.Code (1974, 1984 Repl. Vol.), § 6–406 of the Courts and Judicial Proceedings Article (CJ).[3] This complaint does not name Hopkins Carry Out as a defendant, and the plaintiff did not serve Protopapas as an agent for the unincorporated group.

Further analyzing the record we note the absence of any facts concerning whether, between the two partners, either had primary responsibility for maintaining the premises or the slicing machine. The record is also silent concerning who had started the slicing machine at the time of the

---

ship ... the partnership is liable therefor to the same extent as the partner so acting or omitting to act."
"§ 9–307. **Nature of partner's liability.**
    All partners are liable:
    (1) Jointly and severally for everything chargeable to the partnership under [§ 9–305]."

3. The statute provides:
    "(a) An unincorporated association, joint stock company, or other group which has a recognized group name may sue or be sued in the group name on any cause of action affecting the common property, rights, and liabilities of the group.
    (b) An action under this section:
    (1) Has the same force and effect with respect to the common property, rights, and liabilities of the group as if all members of the group were joined; and
    (2) Does not abate because of any change of membership in the group or its dissolution."
As to "common name" statutes generally, see A. Bromberg, *Crane and Bromberg on Partnership* § 60 (1968); and *Ruzicka v. Rager,* 305 N.Y. 191, 111 N.E.2d 878 (1953).

occurrence, who had brought the infant plaintiff onto the premises and who was responsible for her immediate supervision at the time of the occurrence.

■ The arguments plaintiff made to the Court of Special Appeals fell into two general categories. The first sought to prevent extension of parental immunity to a partner of the infant's parent. In that approach the plaintiff emphasized that public policy manifests concern for the protection of children's rights, that Protopapas was severally liable, and that the father, Michael, was not being sued by the daughter, Niki. Plaintiff's second argument examined the scope of the parent-child immunity concept. Niki submitted that the immunity does not apply, even if the parent is a defendant sued directly by the child, where the tort arises out of the parent's conduct of a business. Plaintiff contended that the policy underlying the immunity, namely, protecting the exercise of parental discretion, is not as strong in the business context as in the domestic context, particularly when it is likely that liability insurance insulates the intrafamily relationship from, at least, the full impact of the litigation.

The Court of Special Appeals answered both aspects of plaintiff's argument by pointing out that, even if the parent is not formally joined as a party defendant to the child's claim, the defendant partner, or the partnership, may claim contribution from the nonparty, partner-parent who is jointly and severally liable. To permit Niki's suit against Protopapas would allow the plaintiff to do indirectly what she could not do directly. This analysis by the Court of Special Appeals rested largely on this Court's bar of a personal injury action by a wife against her husband's partnership in *David v. David*, 161 Md. 532, 157 A. 755 (1932). The Court of Special Appeals thought "the reasoning of *David* ... to be persuasive here." *Hatzinicolas v. Protopapas*, 73 Md. App. 271, 279, 533 A.2d 1311, 1315 (1987).

Answering in particular the business activity argument of the plaintiff, the Court of Special Appeals viewed employment of an underage plaintiff by the parent's partnership to

have been a significant factor present in decisions from other states relied upon by the plaintiff.[4] Employment of the infant is absent in the instant matter. In addition to its having refused judicially to recognize any business exception to parental immunity in *Shell Oil Co. v. Ryckman*, 43 Md.App. 1, 403 A.2d 379 (1979), the intermediate appellate court also described this Court's position in *Frye v. Frye*, 305 Md. 542, 505 A.2d 826 (1986), to be "that the insurance argument was one to be made to the General Assembly should it wish to legislate in the area of parent-child immunity." 73 Md.App. at 279, 533 A.2d at 1315.

We shall consider the precedential value of the *David* decision in Part I. In Part II we shall test the result sought by Protopapas by the policy underlying parent-child immunity.

---

**4.** A handful of jurisdictions have considered whether intrafamily or interspousal immunity bars a minor's or spouse's suit against a parent's or spouse's partner or partnership for injuries arising in the business context. Several courts have permitted an action against the partnership either by recognizing a "business" exception to the parental immunity rule, *see Signs v. Signs*, 156 Ohio St. 566, 103 N.E.2d 743 (1952), *Felderhoff v. Felderhoff*, 473 S.W.2d 928 (Tex.1971), *Borst v. Borst*, 41 Wash.2d 642, 251 P.2d 149 (1952) (en banc), or on the theory that the partnership is a legal entity separate from the individual partners. *See Cody v. J.A. Dodds & Sons*, 252 Iowa 1394, 110 N.W.2d 255 (1961); *Wayne–Oakland Bank v. Adam's Rib*, 48 Mich.App. 144, 210 N.W.2d 121 (1973); *Mathews v. Wosek*, 44 Mich.App. 706, 205 N.W.2d 813 (1973); *Eule v. Eule Motor Sales*, 34 N.J. 537, 170 A.2d 241 (1961).

A minority of courts have denied the minor's or spouse's cause of action against the partnership or its individual partners under the view that a partnership is not a separate entity and that a literal reading of § 13 of the Uniform Partnership Act, *see* CA § 9–305, precludes partnership liability when a partner is individually immune. *See Karalis v. Karalis*, 213 Minn. 31, 4 N.W.2d 632 (1942), *but see Beaudette v. Frana*, 285 Minn. 366, 173 N.W.2d 416 (1969) (abrogated interspousal immunity); *Belleson v. Skilbeck*, 185 Minn. 537, 242 N.W. 1 (1932), *but see Anderson v. Stream*, 295 N.W.2d 595 (Minn.1980) (abrogated parental immunity); *Caplan v. Caplan*, 268 N.Y. 445, 198 N.E. 23 (1935); and *Wadsworth v. Webster*, 143 Misc. 806, 257 N.Y.S. 386 (1932), *but see Jacobs v. United States Fidelity & Guar. Co.*, 2 Misc.2d 428, 431, 152 N.Y.S.2d 128, 132 (N.Y.Sup.Ct.1956) (legislature abrogated interspousal immunity and "the principle of the *Caplan* decision, making it no longer applicable.").

## I

In the *David* case, Minnie B. David, the wife of Samuel David, had filed a personal injury action "against Charles David and Samuel David, co-partners trading as Union Wallpaper Company[.]" 161 Md. at 533, 157 A. at 755. Thus, unlike the instant case, the plaintiff in *David* joined as a party defendant the partner who directly enjoyed a personal immunity. At the time of the *David* suit the only way in which a plaintiff could obtain a judgment which would directly reach partnership assets was to join as defendants all members of the partnership upon whom service of process could be obtained.[5] The predecessor of CJ § 6–406, the common name statute, was not enacted until the Acts of 1937, Ch. 504, § 124. Niki, the infant plaintiff here, did not employ the common name statute. Thus in the instant case, unlike *David*, a judgment for the plaintiff would not "directly reach" all partnership assets. *Cf.* CJ § 6–406(b) (*see* n. 3, *supra* ). The liability asserted in the instant action, however, is also a partnership liability and in that respect this case is like *David* where the wife's injuries resulted from a fall into an open, unguarded, and unlighted elevator shaft on partnership premises.

*David* affirmed a judgment on the pleadings in favor of the defendants. Applying the law of that era, the *David* court reasoned from the premise that the wife could not sue her husband at law due to the common law disability of coverture. One of the amalgam of statutes known as the Married Women's Property Act, specifically, the Act of 1898, Ch. 457, § 5, had in terms empowered married women to sue for torts committed against them as fully as if they

---

**5.** By "directly reach" we mean a judgment which would constitute a lien against partnership real estate in the jurisdiction and under which execution could issue for the seizure of one-hundred-percent of the partnership interest in partnership property or credits. We are not here concerned with the procedures whereby a judgment entered against one who is a partner may be used to reach the judgment debtor's interest in partnership assets. *See, e.g.,* CA § 9–505 (dealing with charging orders).

were unmarried.[6] *Furstenburg v. Furstenburg*, 152 Md. 247, 136 A. 534 (1927), however, gave the statute a limited construction. *Furstenburg* held that the statute applied only to actions by married women against third parties to the marriage relationship but not to actions by married women against their husbands.[7] *Id.* at 252–53, 136 A. at 536.

Faced with *Furstenburg,* the wife in *David* argued that coverture was a defense personal to her husband and that

---

**6.** The statute is today Md.Code (1984), § 4–204(7) of the Family Law Article (FL).

**7.** This narrow interpretation of the Married Women's Property Act was based upon the Supreme Court construction of a similar District of Columbia statute. *See Thompson v. Thompson,* 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180 (1910). The narrow construction was consistently applied in this State. *See Stokes v. Association of Indep. Taxi Operators, Inc.,* 248 Md. 690, 237 A.2d 762 (1968) (per curiam); *Hudson v. Hudson,* 226 Md. 521, 174 A.2d 339 (1961); *Ennis v. Donovan,* 222 Md. 536, 161 A.2d 698 (1960); *Fernandez v. Fernandez,* 214 Md. 519, 135 A.2d 886 (1957); *Gregg v. Gregg,* 199 Md. 662, 87 A.2d 581 (1952); *Riegger v. Bruton Brewing Co.,* 178 Md. 518, 16 A.2d 99 (1940). The narrow interpretation remained in effect until the adoption on November 7, 1972, of the Equal Rights Amendment, Maryland Declaration of Rights, art. 46. Because coverture operated only against the female spouse the vestige of the disability preserved by *Furstenburg* was extinguished by the ERA. In *Lusby v. Lusby,* 283 Md. 334, 337 n. 2, 390 A.2d 77, 78 n. 2 (1978), we observed generally that, under the ERA, many of the disabilities which existed at common law would not be permitted today. *Lusby,* however, held that the common law of Maryland had never prevented a wife from suing her husband in tort where the tortious conduct was outrageous and intentional. *Id.* at 358, 390 A.2d at 89.

The adoption of the ERA had no effect on policy based, gender-neutral interspousal immunity, which continued in Maryland law until our decision in *Boblitz v. Boblitz,* 296 Md. 242, 462 A.2d 506 (1983). There, after reviewing opinions manifesting both common law coverture and interspousal immunity concepts, we said that under the ERA "any ancient deprivation of rights based upon sex would contravene the basic law of this State." *Id.* at 275, 462 A.2d at 522. Thus our abrogation of interspousal immunity in *Boblitz* also recognized that all vestiges of coverture had been abolished in 1972.

Consequently, although FL § 4–204, enacted after *Boblitz* by the Acts of 1984, Ch. 296, § 2, recodifies the Married Women's Property Act which had been construed in *Furstenburg,* the recodified statute cannot constitutionally resurrect the limited construction of the *Furstenburg* decision.

the partnership was an entity distinct from her husband which could not assert the defense. 161 Md. at 536, 157 A. at 756. This argument led the *David* court to review the distinctions between natural and legal persons, on the one hand, and partnerships, as possible entities separate from the partners, on the other. The Court concluded that

> "it is sufficient to say that, for the purposes of this case, the vital difference between a partnership and a legal entity complete in itself, such as a natural person or a corporation, is that each partner is severally liable for the wrongful acts and omissions of the partnership, and that [one partner] is bound to contribute to his copartners his proportionate share of any sum advanced by them to satisfy an enforceable demand against it."

*Id.* at 538, 157 A. at 757. The Court then reasoned that, because the husband might be required to make contribution from his personal estate to the partner, or to the partnership, the same policy which had caused the *Furstenburg* court to exclude suits against a husband from the statutory abrogation of coverture dictated that the vestige of the wife's common law disability should prevent her from suing her husband and his partner, as partners.[8]

---

**8.** The principal portion of the opinion in *David* in which the above-described rationale is expressed reads:

> "In view of that liability, the reasons advanced in *Furstenburg v. Furstenburg, supra,* ... for denying a married woman the right to maintain an action in tort against her husband as an individual apply with equal force to an action in tort against a partnership of which he is a member. The only possible difference is that a judgment against him as an individual would affect only his property, while a judgment against a partnership of which he was a member might be executed against the partnership property, against his property, or against the property of any one or more of his co-partners, but if satisfied through payment by the partnership or advances by his co-partner or co-partners, or from the sale of property respectively owned by the partnership or the co-partners, individually, he could, nevertheless, be compelled to contribute his proportionate share of the loss resulting from the judgment. The same dictates of public policy which have been held to preclude persons who stand in the relation of husband and wife from suing each other individually in tort would also prevent either of them from maintaining such an action against a partnership of which the

That the *Furstenburg* remnant of coverture was substantially interwoven in the *David* holding is clearly demonstrated by *Fernandez v. Fernandez*, 214 Md. 519, 135 A.2d 886 (1957). There a wife had sued her husband in replevin. She contended that a married woman could maintain at law any claim against her husband which was not based on a tort resulting in personal injuries. *Id.* at 521, 135 A.2d at 887. This Court, speaking through Judge Hammond and citing, *inter alia, Furstenburg* and *David,* held that replevin would not lie and that a wife's action to recover her property from her husband was limited to an action in equity. *Id.* at 524, 135 A.2d at 889. If the policy considerations of *Furstenburg* and *David* had predominated over the coverture element, one would expect the analysis in *Fernandez* to have been directed at whether that policy extended to property disputes between spouses. It would also seem to be immaterial from a policy standpoint whether the action was one at law or in equity. Thus, by permitting the action to proceed in equity, *Fernandez* was merely applying the coverture analysis of *David.*

In deciding whether one partner enjoys another partner's personal immunity in a tort action arising out of the partnership business, the weight to be given to *David's* reliance on a partner's exposure for contribution was considerably weakened by *Tobin v. Hoffman*, 202 Md. 382, 96 A.2d 597 (1953). That case, filed in the Circuit Court for Prince George's County, arose out of a two vehicle collision at an intersection in Washington, D.C. The plaintiff, a passenger, sued her host driver, who was her husband's business partner, and sued the operator of the second vehicle. This Court considered District of Columbia substantive law to

---

other was a member, nor is the vestigial legal identity of the husband and wife remaining after the Married Women's Act, which the court in *Furstenburg v. Furstenburg, supra,* recognized as sufficient to prevent an action in tort by a wife against her husband, affected by the fact that the husband is sued only as a member of a partnership."
161. Md. at 538, 157 A. at 757.

control the interspousal immunity defense raised by the husband's partner. *Id.* at 392, 96 A.2d at 601. There was no case law in the District of Columbia on interspousal immunity at that time, other than *Thompson v. Thompson*, 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180 (1910), the decision which had inspired the *Furstenburg* construction of the Maryland Married Women's Property Act. Applying the common law, the *Tobin* Court held that interspousal immunity did not bar the wife's claim against her husband's partner. 202 Md. at 391, 96 A.2d at 601. The common law of the District of Columbia is derived from the common law of Maryland as a result of the federal acceptance in 1791 of the Maryland cession. *See United States v. Groen*, 72 F.Supp. 713 (D.D.C.1947). Whether the defense raised in *Tobin* is considered as a disability of a married woman, or as an immunity of a spousal defendant, the defense is of sufficiently antiquated vintage that the common law underlying it would be the same in both Maryland and the District of Columbia. The *Tobin* court treated *Furstenburg* and *David* as reflecting the common law of the District of Columbia as well as of Maryland, but distinguished *David* on the ground that the husband in *Tobin* had not been joined as a defendant.[9]

---

**9.** The full text of this portion of the *Tobin* opinion reads:

"There is nothing in the policy of the Maryland Law which precludes the bringing of the suit here; nor does the law of the District of Columbia (with which we deal, *infra* ) inhibit this action. It is clear that Maryland will not entertain a suit by one spouse against the other for his or her tort, committed during the marital status. *Furstenburg v. Furstenburg,* 152 Md. 247, 136 A. 534; *David v. David,* 161 Md. 532, 157 A. 755, 81 A.L.R. 1100. Nor can a wife sue a partnership of which her husband is a member for negligently maintaining an unguarded, dangerous elevator shaft into which she fell. *David v. David, supra.* In the case at bar we have a plaintiff who is suing her husband's co-partner in his individual capacity for a tort perpetrated by his own hand, albeit, within the ambit of partnership activities. Mrs. Tobin is not suing the partnership and she has not joined the co-partner (her husband) nor has Hoffman joined him as a defendant. *David v. David* is distinguishable in that there the partnership, *i.e.,* both partners, one of which was the plaintiff's husband, were sued in a proceeding which would render both jointly and severally liable in damages for maintaining the

Of particular significance to the Court of Special Appeals' use of *David* is that the defendant partner in *Tobin* specifically argued that the spousal partner would be obligated for contribution to the named defendant. The partnership in *Tobin* was dissolved sometime after the accident giving rise to the suit. In the dissolution agreement the husband covenanted to contribute to the defendant partner one-half of the liability of the partnership arising out of the accident, in excess of the amount paid by liability insurance. 202 Md. at 392, 96 A.2d at 601. This Court, through Chief Judge Sobeloff, said: "We are disinclined to hold that such a voluntary agreement, especially when made after the accident, inhibits this suit." *Id.*

At the time of *Tobin* there was no District of Columbia partnership statute.[10] Nevertheless, under the common law, where one partner, because of the joint or joint and several liability of partners, is forced to pay an entire partnership debt, the other partners are obliged to indemnify pro rata. *See* A. Bromberg, *Crane and Bromberg on Partnership* § 65, at 371–73 (1968) (Bromberg). Even though the dissolution agreement between the partners in *Tobin* in effect recognized the spousal partner's common law obligation, the *Tobin* Court attached no significance to

open shaft, a wrong as to which they were joint tort feasors; while in the instant case, the plaintiff's husband appears only as a party-plaintiff, not a party-defendant, and the wrong sought to be recompensed was the sole wrong of Hoffman. The case at bar is thus not one of a wife suing her husband for his wrong. We declare, therefore, that this suit by the plaintiff against Hoffman is not barred, notwithstanding that in the District of Columbia the common law rule that spouses are not liable for the tortious acts of one against the other is extant and unaffected by D.C.Code (1951) Sec. 30–208 which reads in part: 'Married women shall have power * * * to sue * * * for torts committed against them, as fully and freely as if they were unmarried, * * * *'. See *Thompson v. Thompson*, 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180."
202 Md. at 391, 96 A.2d at 601.

10. The Uniform Partnership Act became effective in the District of Columbia on September 27, 1962. Uniform Partnership Act, Pub.L. No. 87–709, 76 Stat. 636 (1962).

the contribution obligation when only the husband's partner was sued by the wife.

*Tobin* did, however, find significance in *Yellow Cab Co. v. Dreslin,* 181 F.2d 626 (D.C.Cir.1950). 202 Md. at 392, 96 A.2d at 601. *Yellow Cab* held that the defendant in an action by the wife could not claim contribution from the husband, as an alleged joint tortfeasor. Because the husband enjoyed interspousal immunity, there was no joint liability and thus there was "nothing to which a right of contribution could attach." [11] 181 F.2d at 627.

*Tobin* employed joint tortfeasor principles to test whether the immunity of one partner would affect another partner's liability. The result reached in *Tobin* by applying the District of Columbia law of joint tortfeasors is the same as that under Maryland law. Under the Maryland Uniform Contribution Among Tort–Feasors Act, Md.Code (1957, 1986 Repl.Vol.), Art. 50, § 16(a) " '[j]oint tort-feasors' means two or more persons jointly or severally liable in tort for the same injury to person or property[.]" Our cases have held that there is no right to contribution from an alleged joint tortfeasor who enjoys immunity as to the plaintiff's claim, because there is no common liability to the plaintiff. *See Ennis v. Donovan,* 222 Md. 536, 161 A.2d 698 (1960) (interspousal immunity); *Baltimore Transit Co. v. State ex rel. Schriefer,* 183 Md. 674, 39 A.2d 858 (1944) (workers' compensation immunity). *See also Zaccari v. United States,* 130 F.Supp. 50 (D.C.Md.1955) (applying Maryland parent-child immunity). Thus *Tobin* casts doubt on the significance, under Maryland law, of Michael's obligation, based on the partnership agreement, to contribute his pro rata share of any partnership loss.

In its decision in this case the Court of Special Appeals also cited *Stokes v. Association of Indep. Taxi Operators, Inc.,* 248 Md. 690, 237 A.2d 762 (1968) (per curiam) and

---

**11.** *But see Perchell v. District of Columbia,* 444 F.2d 997 (D.C.Cir.1971) (joint tortfeasor permitted to claim contribution from immune joint tortfeasor-parent).

*Riegger v. Bruton Brewing Co.*, 178 Md. 518, 16 A.2d 99 (1940) in support of its conclusion that it would be inconsistent with the parent-child immunity doctrine for Niki to obtain damages "that in the end would be payable in part by the injured child's father." *Hatzinicolas v. Protopapas*, 73 Md.App. 271, 276, 533 A.2d 1311, 1313 (1987). Both cases held that respondeat superior liability may not be imposed on the master of a negligent servant who is immune from liability to the plaintiff. 248 Md. at 691, 237 A.2d at 762; 178 Md. at 525, 16 A.2d at 102. For a number of reasons we shall not extend the rule applied in those cases to the instant facts.

First, the potential liability of the negligent servant to the master is one-hundred-percent of the loss caused to the master by the servant's negligence in the course of the master's business. The obligation between partners, unless their voluntary agreement provides otherwise, is stated under CA § 9–401:

"(1) Each partner ... must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits [, and]

(2) The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property."

Thus, Michael's exposure under these obligations is to contribute his pro rata share of any partnership loss. Although his obligation is contractual, it is more like the pro rata contribution among joint tortfeasors than like the one-hundred-percent indemnification of a master by a negligent servant.

Second, the record before us does not present facts under which one partner may be required to indemnify a partner or the partnership for a loss in its entirety. "Generally, partnership losses occasioned by the conduct or poor judgment of one partner will be borne by the partnership in the absence of fraud, culpable negligence, or bad faith." *Mar-*

*cus v. Green,* 13 Ill.App.3d 699, 710, 300 N.E.2d 512, 520 (1973) (where statutory liability without fault for personal injury in the collapse of scaffolding was an inherent risk of real estate developer partnership, one partner could not, absent express indemnification, shift his share of the partnership liability to another partner who, as builder for the partnership, had control of the scaffolding).

Third, the rule of *Riegger* and *Stokes,* which precludes respondeat superior liability by extending the servant's intrafamily immunity to the master, is the rule only in a small minority of states. We discussed this minority position in *James v. Prince George's County,* 288 Md. 315, 418 A.2d 1173 (1980), involving a Prince George's County charter provision waiving governmental immunity. *Bradshaw v. Prince George's County,* 284 Md. 294, 305, 396 A.2d 255, 262 (1979) had held that, despite the waiver, the county was not liable where public official immunity was enjoyed by the individual for whose allegedly tortious conduct the county was sought to be held responsible. We re-examined the *Bradshaw* analysis in *James* where we said:

> "As a general rule, followed by a vast majority of American courts, the master remains liable for the servant's conduct even though the servant is himself not liable because of a personal immunity. *See* 2 F. Harper & F. James, [*The Law of Torts* ] § 26.17, at 1427 n. 6 [ (1956) ] (citing cases); Annot., 1 A.L.R.3d 677, 689–99 (1965 & 1979 Supp.) (citing cases from 25 American jurisdictions plus England & Canada); *Restatement (Second) of Agency* § 217 (1958); W. Seavy, *Handbook of the Law of Agency* § 93, at 167 (1964). However, there is an exception to this view, recognized in Maryland and a handful of other jurisdictions, which permits an employer to assert the immunity of the employee in a suit by a member of the employee's family. *See Riegger v. Brewing Company,* 178 Md. 518, 523, 16 A.2d 99, 101 (1940) (suit by wife against husband's employer); Annot., 1 A.L.R.3d, *supra,* at 685–86 (citing cases from six jurisdictions).[14]

" [14] Our research indicates that after Maryland joined the small minority of states that adopted this principle of *respondeat superior* in

*Riegger v. Brewing Company,* 178 Md. 518, 16 A.2d 99 (1940), no other jurisdiction, except for the District of Columbia, *see Baker v. Gaffney,* 141 F.Supp. 602 (D.D.C.1956) (following Maryland law as its own), has likewise adopted it. In fact, a note in the Maryland Law Review concerning the *Riegger* decision points out that when this Court decided that case, the trend was clearly opposite the view there taken. 6 Md.L.Rev. 173, 175 n. 13 (1942). While Professor Prosser characterizes the Maryland view of vicarious liability in this area of intra-family immunity as "obsolete" in that it confuses immunity from suit with lack of responsibility, W. Prosser, *Handbook of the Law of Torts* § 122, at 869 (4th ed. 1971), we are not called upon here to decide whether to retain the doctrine as it pertains to intra-family immunity."

288 Md. at 332 & n. 14, 418 A.2d at 1182–83 & n. 14. *James* rejected *Bradshaw*'s rule that Prince George's County was not liable if the individual tortfeasor was immune. *James* further limited the *Riegger* limitation on respondeat superior liability to the intrafamily immunities. *Id.* at 333, 418 A.2d at 1183. Accordingly, *Riegger* and *Stokes* do not point the way toward enlarging the scope of intrafamily immunities so as to extend the defense to the partner of a parent.

Because *David* is neither controlling nor, of itself, persuasive, we examine contribution between partners in light of the policy underlying parent-child immunity.

## II

The parent-child immunity doctrine " 'is founded upon public policy, and is designed to preserve the peace and harmony of the home, as well as to recognize the authority of the parent, under normal conditions, responsible for the maintenance of the home.' " *Frye v. Frye,* 305 Md. 542, 550, 505 A.2d 826, 830 (1986) (quoting *Yost v. Yost,* 172 Md. 128, 134, 190 A. 753, 756 (1937) (minor child cannot sue father in equity for failure to provide support or for neglect).

*Mahnke v. Moore,* 197 Md. 61, 77 A.2d 923 (1951) carved out of the parent-child immunity doctrine an exception under which a minor child has a right of action against a parent for injuries resulting from cruel and inhuman treatment or for malicious and wanton wrongs. In *Frye,* we

repeated what *Mahnke* had been careful to point out, namely:

> " 'It is conceded, of course, that parental authority should be maintained. It is also conceded that a child should forego any recovery of damages if such recovery would unduly impair discipline and destroy the harmony of the family. Ordinarily, the parent is not liable for damages to the child for a failure to perform a parental duty, or for excessive punishment of the child not maliciously inflicted, or for negligent disrepair of the home provided by the father. These grow out of and pertain to the relation of parent and child.' "

305 Md. at 550–51, 505 A.2d at 830–31. We summed up the fundamentals of the doctrine when we said in *Frye* that "[o]ur primary concern with regard to matters involving the parent-child relationship [is] the protection of family integrity and harmony and the protection of parental discretion in the discipline and care of the child." *Id.* at 551, 505 A.2d at 831. Protopapas submits that the protection of these interests requires that the claim against him be dismissed because he has a right to contribution from Michael.

The issue before us presents Protopapas as a joint tortfeasor who, at the option of the plaintiff, is liable to the plaintiff for one-hundred-percent of the damages. It is only internally, within this two-person, equal partnership, that Protopapas has a right to reduce any ultimate, personal loss to fifty-percent by contribution from Michael. Thus, Protopapas's position is that although he would ordinarily be liable to a similarly situated plaintiff for the entire loss, his partner's daughter should have no recovery whatsoever because her father is liable to contribute fifty-percent of any partnership loss.

Preservation of the family interests described above does not require that we extend parent-child immunity to bar any recovery from a parent's partner.

At the time of the occurrence Hopkins Carry Out either had adequate liability insurance covering this claim, had

inadequate liability insurance or had no liability insurance whatsoever.[12] If Hopkins Carry Out had adequate liability insurance, Michael already paid his partnership share of any liability to the plaintiff by his contribution to the premium of the firm's liability policy. On that basis this suit would not impact the parent-child relationship.

If Hopkins Carry Out has inadequate or no liability insurance, Michael will be required personally to contribute his partnership share of any recovery or of any excess recovery. Michael agreed to take that risk when, in partnership form, he entered into a business, one of the exposures of which was tort liability to persons on the business premises. But it would be unrealistic to pretend that Michael and Evgenia did not take the possible extent of his contribution obligation into account when the decision was made in the Hatzinicolas family to have Niki sue Protopapas. Here the plaintiff child lives with both parents. If the suit were unacceptable within the family unit, presumably it would not have been brought. While the decision to have a child sue a parent's partner may impair, or even destroy, the relationship between partners, that relationship is not the concern of the parent-child immunity doctrine. From the standpoint of the subject doctrine, neither parental authority nor family harmony are significantly impaired by the fact that in a child's action against a parent's partner,

---

**12.** This analysis does not imply that the existence of a cause of action hinges upon the presence of liability insurance. It is unprincipled to recognize a cause of action on a given set of facts against an insured defendant and to deny a cause of action on the same set of facts against an uninsured defendant. *See Frye v. Frye,* 305 Md. 542, 564, 505 A.2d 826, 837 (1986); and *Schneider v. Schneider,* 160 Md. 18, 24, 152 A. 498, 500 (1930). Our analysis considers the effect on intrafamily relationships under all combinations of circumstances.

*Frye* further considered a factor not present here, the effect of compulsory automobile insurance on parent-child immunity. As an additional reason for refusing even partially to abrogate parent-child immunity by limiting the abrogation to automobile tort cases we deferred to legislative judgment for adjustments in the common law which could impact compulsory insurance. 305 Md. at 567, 505 A.2d at 839. There is no statutory mandate that every retail business carry premises liability insurance.

partners or partnership, the economic effect might be to reduce the recovery within the family unit by the parental partner's contractual, pro rata share of the partnership liability to the plaintiff.[13]

Accordingly, we hold that it was error to grant Protopapas summary judgment. To the extent that *David v. David*, 161 Md. 532, 157 A. 755 (1932) is to the contrary, *David* is overruled.[14]

The solution proposed by the concurring opinion is to reduce the infant's recovery by a percentage equal to the percentage of the parent's interest in partnership profits and losses. This "equitable" result protects parental immunity by extending it at the sacrifice of principles of the law of damages and of contracts. The rule contended for reduces the plaintiff's damages on a basis which has nothing to do with the nature and extent of the injuries but on the basis of the deal which the child's parent has struck with the parent's partners. That result cannot be sustained by analogy to a joint tortfeasor's release. In the latter scenario the plaintiff's damages are reduced as a result of the plaintiff's agreement with the settling tortfeasor. The infant plaintiff's guardian has not agreed to any reduction from a full recovery. Further, even if the infant plaintiff's

---

**13.** As to the procedure for asserting a right to contribution based on the contract of partnership, *compare* CA § 9–405 (partner's right to an account) and *Seeley v. Dunlop*, 157 Md. 378, 146 A. 271 (1929) (aside from an action of account, the general rule is that one partner may not sue his co-partner at law unless the cause of action is distinct from partnership accounts or the damages belong exclusively to the plaintiff-partner) *with Marcus v. Green*, 13 Ill.App.3d 699, 300 N.E.2d 512 (1973) (third-party indemnification action between partners permitted as an exception to the general rule).

**14.** This analysis makes it unnecessary that we expressly consider the plaintiff's contention that we should judicially abrogate parent-child immunity in the business context. We could not, by a partial abrogation of the common law doctrine, repeal the Uniform Partnership Act under which Protopapas has a contractual right to contribution, unless waived. Hence, in the partnership context, the business tort theory urged by the plaintiff produces the same result which we have reached by not extending the doctrine to a parent's partner.

damages could be arbitrarily reduced by some amount, what would otherwise be partnership losses would be reduced by that amount. The parent would not enjoy one-hundred-percent of the reduction in the loss but, under partnership principles, the parent would enjoy the amount of a reduction from a full recovery for the plaintiff only to the extent of the parent's responsibility for partnership losses. Thus the theory advanced by the concurrence requires holding that the partnership agreement here is illegal in part and that its contribution obligations cannot be applied to one partner as to one loss. Finally, even if the plaintiff's claim is meritorious, it may or may not be entered in the partnership accounts, depending on the fact and extent of liability insurance, so that the reduction from the plaintiff's recovery may not even inure to the parent. The preservation of parent-child immunity under facts of the instant type does not justify contorting legal principles in the manner suggested.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, CASE REMANDED TO THAT COURT FOR THE ENTRY OF A MANDATE VACATING THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMANDING THIS CASE TO THAT COURT FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY THE RESPONDENT, NICHOLAS PROTOPAPAS.

McAULIFFE, J., concurs in opinion in which COLE and BLACKWELL, JJ., join.

McAULIFFE, Judge, concurring.

I agree that a child's legitimate claim against someone who is legally responsible for her injuries should not be snuffed out in its entirety simply because her parent is in the position of one who ordinarily would be required to contribute to the payment of the claim. I do not agree that the solution is to strip away the parent's immunity.

This child's claim would ordinarily be against the partnership and its partners. Here, the Plaintiff knew she could

not maintain a direct action against her father, so he was not named as a defendant, notwithstanding his liability as a general partner. Additionally, the Plaintiff apparently recognized that she could not sue the partnership because a judgment against the partnership would directly impact upon her father. Accordingly, she did what she should have done—she sued the remaining partner, who, if the Plaintiff's claim is meritorious, has a legal responsibility to respond to her in damages, and who enjoys no immunity from suits by her. The problem arises with respect to contribution. Under ordinary circumstances a partner who must pay a third party because of a partnership liability is entitled to recover contribution from the remaining general partners in proportion to their respective interests. Under the facts of this case, therefore, the father would end up paying one-half of any judgment his daughter obtained against his partner. The impact, then, is precisely the same as if the daughter had named her father as a defendant in the first instance. To allow this result is to defeat the policy of parent-child immunity, and the courts have been quick to recognize that fact. A simple principle has been employed to protect the immunity—the law will not permit to be done indirectly that which may not be done directly. The parent-child immunity should not be defeated by the legal nicety of employing a two-step process to reach the parent's pocket. Suing the partner, when the obligation, if any, is that of the partnership, affords sure and certain access to the parent's assets. This access is indirect in the sense that the parent is not sued by the child. The impact, however, is immediately seen and legally certain.

What, then, is to be done to give effect to the principle that one ought not be permitted to do indirectly what he cannot do directly? Two potential solutions are immediately apparent: 1) the claim of the child may be barred entirely; or 2) the child's claim may be prosecuted, but the parties found responsible for the child's injury may not require contribution, to which they otherwise would be entitled, from the parent. Both solutions achieve the goal

of preserving the policy of parent-child immunity. The first solution, however, penalizes the child and allows those who ought to pay to entirely escape liability. The second solution allows recovery by a child who should be compensated, and fulfills the socially desirable goal of requiring those who are responsible for a wrong to respond in damages.

The difficulty with the second solution is that it necessarily deprives the defendants who are found liable to the infant of a right they would otherwise have—the right to recover a part of their payment from a partner. This is not, however, a difficulty without a remedy. The answer is to provide for a reduction in the child's recovery by the amount which those answerable to the infant could have recovered from the parent by way of contribution had the immunity not existed.[1] Employing this procedure the child neither sues, nor recovers from, the parent. The child is permitted to recover from those who are responsible and the responsible parties pay no more than is fair and just.

This method of striking a fair balance between all involved parties is hardly unique. The procedure is analogous to that employed where a joint tort-feasor release has been obtained by one joint tort-feasor. Where the release provides for a pro-rata reduction of the damages recoverable against all other tort-feasors, the party released may not be sued for contribution; however, the remaining defendants suffer no loss because of their right to obtain an appropriate reduction of any judgment against them upon proving that they would be entitled to contribution in the absence of the release. *See* Maryland Code (1957, 1986 Repl.Vol.) Art. 50, § 20; *Allgood v. Mueller*, 307 Md. 350,

---

1. The right to contribution seems clear under the facts of this case. Under other circumstances, it may be necessary to litigate the question of whether the partner sued was acting in the ordinary course of the business of the partnership or with the authority of the other partners. Although there will be occasions when that issue may be litigated in the trial of the child's claim, ordinarily the better course would be to litigate that issue separately, thereby avoiding the potential for jury confusion and any semblance of an action by the child against the parent.

513 A.2d 915 (1986). The doctrine of parent-child immunity has the effect of "releasing" a tort-feasor who would otherwise be liable for contribution. Thus, the two situations are comparable, and I would apply to this case the solution which has already found favor with the Legislature, and which offers the greatest equity to all parties while preserving the parent-child immunity.[2]

Development of a rule of this sort does not, in my opinion, exceed the legitimate exercise of this Court's authority. The rule of parent-child immunity is not one of legislative origin, but is a part of the common law. It is the proper function of this Court, at least in the absence of legislative action, to interpret, refine and modify the common law as necessary. *Ireland v. State*, 310 Md. 328, 331–32, 529 A.2d 365 (1987). It is similarly a proper function of the Court to develop procedures for fair and equitable implementation and preservation of a venerable common law principle, and I propose no more than that.

Finally, I cannot agree with the majority's reasoning that the parent-child immunity should not apply because the family unit has taken into consideration the potential for financial impact upon a parent. The rationale is that if the family agrees to bring the action, there can be no possible harm to the family unit. To accept that rationale is to abrogate the immunity, because the reasoning has no special application to partnership cases. If the majority intends to generally abrogate the principle of parent-child immunity, it should say so. This justification for today's result only serves to unsettle other areas of the law of parent-child immunity.

Judges COLE and BLACKWELL agree with the views expressed herein.

---

**2.** Although the right to contribution in the instant case arises from a partnership relationship, I would apply the same principles to an action brought by a child when the right to contribution arises because there are joint tort-feasors. Concededly, this would represent a change in Maryland law. *See Ennis v. Donovan,* 222 Md. 536, 161 A.2d 698 (1960).